**IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT**
**IN AND FOR LEE COUNTY, STATE OF FLORIDA**
**CIVIL DIVISION**

Glenn Acciard, Howard Amberg, Anne and John
America, William Bacigalupo, Jonathan and
Cynille Bates, Peggy A. Bedwell, Irma Farmer,
Robert and Karen Forscutt, Ursula M. Fritsch,
Bruce and Mitzi Ghiloni, Noemi and George
Hernandez, Daniel A. Hershberger, Astor HoSang,
Wayne I. and Ruth Kacher, Sr., Kenneth and
Catherine Kapp, Michael and Margaret Lamb,
Debra G. Laubach, Frederick C. Laubach Jr., Peter
and Lynda Lewis, Donald L. and Lauren Lodarek,
Andrew Colin Long, Donald and Nina H. Long,
Richard and Tari Lee Marek, Thomas and Deborah
McCann, Eileen Messier, Jeff and Elizabeth
Montgomery, Curt R. and Jeannette Nord, Stanley
and Betty Rosenzweig, Alyce and Patrick Sheehan,
Richard S. and Carol A. Shifflett, Merritt Lawrence
Silcox, William and Kathleen Torlucci, James E.
Wolfe, and Robert and Joan Wright.

      Plaintiffs,

vs.

CASE NO.: 07 – CA – 002190
Judge: McIver, William C

Russell Whitney, individually, John Kane,
individually, Whitney Education Group, Inc.,
Gulfstream Development Group, LLC, a Florida
limited liability corporation, Gulfstream Realty &
Development, LLC, a Florida limited liability
corporation, Gulfstream Investment Group, LLC, a
Florida limited liability corporation, United
Mortgage Corporation, a Florida corporation, Kevin
Caraotta, individually, Douglas Realty, Inc., a
Florida corporation, Brian Haag, individually,
Kevin Haag, individually, Douglas Haag,
individually, Paradise Title Services, Inc., a Florida
corporation, The Construction Loan Company, Inc.,
a Michigan corporation, Greenbriar Real Estate
Holdings, Inc. a Florida corporation, Huron River
Area Credit Union, Webster Bank, NA, Norlarco
Credit Union, First Community Bank of Southwest
Florida, Vision Capital Enterprises, Inc. and EMC
Mortgage Corporation.

      Defendants.

_____/

# COMPLAINT

Plaintiffs Glenn Acciard, Howard Amberg, Anne and John America, William Bacigalupo, Peggy A. Bedwell, Jonathan and Cynille Bates, Irma Farmer, Robert and Karen Forscutt, Ursula M. Fritsch, Bruce and Mitzi Ghiloni, Noemi and George Hernandez, Daniel A. Hershberger, Astor HoSang, Wayne I. and Ruth Kacher, Sr., Kenneth and Catherine Kapp, Michael and Margaret Lamb, Debra G. Laubach, Frederick C. Laubach, Jr., Peter and Lynda Lewis, Donald L. and Lauren Lodarek, Andrew Colin Long, Donald and Nina H. Long, Richard and Tari Lee Marek, Thomas and Deborah McCann, Eileen Messier, Jeff and Elizabeth Montgomery, Curt R. and Jeannette Nord, Stanley and Betty Rosenweig, Alyce and Patrick Sheehan, Richard S. and Carol Ann Shifflett, Merritt Lawrence Silcox, William and Kathleen Torlucci, James E. Wolfe, and Robert and Joan Wright ("Plaintiffs") sue the Defendants, Russell Whitney, John Kane, Whitney Education Group, Inc., Gulfstream Development Group, LLC, Gulfstream Realty & Development, LLC, Gulfstream Investment Group, LLC, United Mortgage Corporation, Kevin Caraotta, Douglas Realty, Inc., Brian Haag, Kevin Haag, Douglas Haag, Paradise Title Services, Inc., The Construction Loan Company, Inc., Greenbriar Real Estate Holdings, Inc., Huron River Area Credit Union, Webster Bank, NA, Norlarco Credit Union, Vision Capital Enterprises, Inc., First Community Bank of Southwest Florida and EMC Mortgage Corporation.

1.     This is an action for damages exceeding $15,000.00 in amount, exclusive of interest and costs.

2.     This action involves title to real property located in the State of Florida.

3.     The Plaintiff Glenn Acciard is an individual residing in the Commonwealth of Massachusetts.

4.     The Plaintiff Howard Amberg is an individual residing in the State of Illinois.

5.      The Plaintiffs Anne and John America are husband and wife and reside in the State of Missouri.

6.      The Plaintiff William Bacigalupo is an individual residing in the Commonwealth of Massachusetts.

7.      The Plaintiffs Jonathan and Cynille Bates are husband and wife and reside in the Commonwealth of Virginia.

8.      The Plaintiff Peggy A. Bedwell is an individual residing in the State of Alabama.

9.      The Plaintiff Irma Farmer is an individual residing in the State of Maryland.

10.     The Plaintiffs Robert and Karen Forscutt are husband and wife and reside in the State of North Carolina.

11.     The Plaintiff Ursula M. Fritsch is an individual residing in the State of Florida.

12.     The Plaintiff Bruce and Mitzi Ghiloni are husband and wife and reside in residing in the State of Florida.

13.     The Plaintiff Daniel A. Hershberger is an individual residing in the State of Ohio.

14.     The Plaintiffs Noemi and George Hernandez are husband and wife and reside in the State of Indiana.

15.     The Plaintiff Astor HoSang is an individual residing in the State of New Jersey.

16.     The Plaintiffs Wayne I. Kacher, Sr. and Ruth Kacher are husband and wife and reside in the State of Maryland.

17.     The Plaintiffs Kenneth and Catherine Kapp are husband and wife and reside in the State of Pennsylvania.

18.     The Plaintiffs Michael and Margaret Lamb are husband and wife and reside in the State of Michigan.

19.     The Plaintiff Debra G. Laubach is an individual residing in the State of Maryland.

20.     The Plaintiff Frederick C. Laubach, Jr. is an individual residing in the State of Maryland.

21.     The Plaintiffs Peter and Lynda Lewis are husband and wife and reside in the State of New York.

22.     The Plaintiffs Donald L. and Lauren Lodarek are husband and wife and reside in the State of Wisconsin.

23.     The Plaintiff Andrew Colin Long is an individual residing in the State of Maryland.

24.     The Plaintiffs Donald and Nina H. Long are husband and wife and reside in the State of Maryland.

25.     The Plaintiffs Richard and Tari Lee Marek are husband and wife and reside in the State of California.

26.     The Plaintiffs Thomas and Deborah McCann are husband and wife and reside in the State of New Jersey.

27.     The Plaintiff Eileen Messier is an individual residing in the State of Illinois.

28.     The Plaintiffs Jeff and Elizabeth Montgomery are husband and wife and reside in the State of Minnesota.

29.     The Plaintiffs Curt R. and Jeannette Nord are husband and wife and reside in the State of Illinois.

30.     The Plaintiffs Stanley and Betty Rosenzweig are husband and wife and reside in the State of Florida.

31.     The Plaintiffs Alyce and Patrick Sheehan are husband and wife and reside in the State of Indiana.

32.     The Plaintiffs Richard S. and Carol A. Shifflett are husband and wife and reside in the State of Maryland.

33.     The Plaintiff Merritt Lawrence Silcox is an individual residing in the State of Pennsylvania.

34.     The Plaintiffs William and Kathleen Torlucci are husband and wife and reside in the State of New Jersey.

35.     The Plaintiff James E. Wolfe is an individual residing in the State of Alabama.

36.     The Plaintiffs Robert and Joan Wright are husband and wife and reside in the State of Minnesota.

37.     The Defendant Russell Whitney ("Whitney") is an individual residing in Lee County Florida.  Russell Whitney is the president and chairman of the board of Whitney Education Group, Inc.

38.     The Defendant John Kane ("Kane") is the Chief Operating Officer of Whitney Education Group.  Kane also does business as Kane Realty.

39.     The Defendant Whitney Education Group, Inc. ("Whitney Education") is a Florida corporation doing business in Lee County, Florida.  Whitney Education conducts real estate seminars throughout the United States, including Florida, under the name "Millionaire University" ("MU").

40.     The Defendant Gulfstream Development Group, LLC ("Gulfstream") is a Florida limited liability company doing business in Lee County, Florida.  Its Managing Member is Brian Haag.  Brian Haag is part of Russell Whitney's real estate "Power Team."

41.     The Defendant Gulfstream Realty & Development, LLC ("Gulfstream Realty") is a Florida limited liability company doing business in Lee County, Florida.  Its managing member is Kevin Haag.

42.     The Defendant Gulfstream Investment Group, LLC ("Gulfstream Investment") is a Florida limited liability company doing business in Lee County, Florida.  Its managing member is Kevin Haag.

43.     The Defendant United Mortgage Corporation ("United Mortgage") is a Florida corporation doing business in Lee County, Florida. At all material times United Mortgage acted as agent to obtain mortgages and loans for the Lenders, as hereinafter defined, and acted within the scope of its agency.

44.     The Defendant Kevin Caraotta is the President of United Mortgage and a resident of the State of Florida.

45.     The Defendant Douglas Realty, Inc. ("Douglas Realty") is a Florida corporation doing business in Lee County, Florida. Its president is Kevin Haag and its vice president is Kevin's brother, Douglas Haag. Both are directors of Douglas Realty. The Haags are part of Russell Whitney's real estate "Power Team."

46.     The Defendant Kevin Haag is an individual residing in Lee County, Florida.

47.     The Defendant Brian Haag is an individual residing in Lee County, Florida.

48.     The Defendant Douglas Haag is an individual residing in Lee County, Florida.

49.     The Defendant Paradise Title Services, Inc. ("Paradise") is a Florida corporation doing business in Lee County, Florida.

50.     The Defendants Whitney, Kane, Whitney Education, Gulfstream, Gulfstream Realty, Gulfstream Investment, United Mortgage, Douglas Realty, Paradise, Brian Haag, Kevin Haag, Douglas Haag and Kevin Caraotta ("the MU Partners") are partners or joint venturers in an enterprise to sell, develop, finance, market and manage Florida real estate to and for Millionaire University students (the "MU Partnership" or "MU Enterprise"). Whitney and Whitney Education acted as the marketing arm of the MU Partnership enticing prospective purchasers of property to their offices in Cape Coral, Florida where the MU Program, described below, was presented to the prospects by the MU Partners.

51.     The Defendant The Construction Loan Company, Inc. ("CLC") is a Michigan corporation doing business in Lee County, Florida. CLC provided construction loans to MU

students pursuant to business arrangements created by United Mortgage on CLC's behalf to facilitate the fraudulent transactions.

52. The Defendant Greenbriar Real Estate Holdings, Inc. ("Greenbriar REH") is a Florida corporation doing business in Lee County, Florida. Upon information and belief, Greenbriar REH is owned or controlled, directly or indirectly, by the MU Partnership and was formed in July 2005 for the purpose of acquiring properties in Florida for resale to MU students.

53. Hereinafter the MU Partners, CLC and Greenbriar REH are referred to as the "Defendants." At all relevant times, each of the Defendants acted as agent for each of the other Defendants so that each of the Defendants could obtain money from the MU students.

54. The Defendant Huron River Area Credit Union ("Huron") is a Michigan corporation doing business in Lee County, Florida. Upon information and belief, CLC assigned each construction loan made by CLC to any of the Plaintiffs to Huron for a profit to CLC. Huron is named as a Defendant because its rights may be affected by the relief requested in this action.

55. The Defendant Webster Bank NA ("Webster") is a foreign corporation doing business in Lee County, Florida. Webster provided construction loan financing to Acciard and Lamb pursuant to a note and mortgage.

56. The Defendant Norlarco Credit Union ("Norlarco") is a financial cooperative headquartered in the State of Colorado and doing business in Lee County, Florida. Norlarco provided construction loan financing to America, Hershberger, Debra Laubach, Messier and Rosenzwieg pursuant to a note and mortgage.

57. The Defendant Vision Capital Enterprises, Inc. ("Vision") is a Minnesota corporation doing business in Lee County, Florida. Vision provided construction loan financing for Lamb.

58. The Defendant First Community Bank of Southwest Florida ("First Community") is a Florida corporation doing business in Lee County, Florida. First Community provided

construction loan financing to Curt R. and Jeanette Nord pursuant to a note and mortgage. Hereinafter First Community, Vision, Norlarco, Webster and CLC are referred to collectively as the "Lenders."

59. The Defendant EMC Mortgage Corporation is a foreign corporation headquartered in the State of Texas and doing business in Lee County, Florida. United Mortgage has assigned notes and mortgages made by Plaintiffs to EMC for a profit. EMC has purchased notes and mortgages of America, Bacigalupo, HoSang, Lamb, Debbie Laubach, Donald L. and Nina Long, Lodarek, Andrew Colin Long, Curt R. and Jeannette Nord, and Stanley and Betty Rosenzweig. EMC Mortgage is named as a Defendant because its rights may be affected by the relief requested in this action. EMC took an assignment of the notes and mortgages subject to the defenses and claims of the Plaintiffs.

## THE FRAUDULENT SCHEME

60. The Defendants participated in a scheme to defraud people of their money through the sale of real estate in Southwest Florida at inflated prices with excessive fees and commissions paid to the various defendants as part of the fraudulent transactions. The Defendants entice people to invest in real estate through real estate educational courses in which the Defendants intentionally build a relationship of trust with the "students" to whom they then pitch their real estate investment "opportunities." The real estate courses, which generally cost in excess of $10,000.00, facilitate the Defendants' fraud by attracting people from throughout the United States who are highly motivated to invest in real estate, lack experience and know-how in real estate investment and have sufficient funds and financial credit to invest in real estate. During the Defendants' real estate courses, the students, who are the targets of the fraud, are "taught" how to identify good real estate investments and then are presented with the Defendants' investment "opportunity," which the Defendants' representative's/instructors and agents represent matches what the MU students were taught they should buy. Some of the

instructors and mentors who teach and guide the students are employed by or have an ownership interest in the Defendant corporations who participate in the selling and financing of the investment.

61.     Pursuant to the scheme to defraud, the Defendants Whitney Education and Russ Whitney advertise the educational courses using infomercials, broadcast on television stations throughout the United States, promoting the sale of real estate investment courses called "Millionaire University." During the infomercial Whitney tells how he made millions in real estate and uses testimonials from others who explain how they made money in real estate using information learned from attending Millionaire University. The infomercial then gives information about how the viewer can attend a free one day seminar offered in that television viewing area to learn how to make money in real estate.

62.     During the one day seminar Whitney Education provides some instruction regarding real estate investing. Whitney Education manipulates the teacher/student relationship to build a relationship of trust with the seminar attendees. The instructors tell their students that the real estate instruction given during the one day seminar only scratches the surface of the subject and that to succeed in real estate investment the student should increase their credit card limits and then purchase and enroll in other expensive real estate courses offered by Whitney Education. This includes an "advanced" real estate course offered in the viewer's home state that can cost as much as $1,500. They also try to sell additional advanced real estate courses offered in various cities throughout the United States. Each "advanced" course is for three days and can cost over $10,000.00 without advance purchase discounts.

63.     Whitney Education also informs students that a prerequisite to attending all other advanced courses is attendance at the Intensified Real Estate Training Course offered in the offices of Whitney Education in Cape Coral, Florida, also known as MU. During this three-day "intensified" course, the "students" are "taught" about real estate investing from so-called real

estate "millionaire" experts, who cultivate and establish a relationship of trust with the students. The Defendants' goal is to convince the MU students that Whitney Education and the representatives of the Defendants who speak to the students who attend MU are real estate millionaire experts upon whom the students should place their trust and reliance in making real estate investment decisions.

64. At MU, the Defendants' representatives teach the MU students that to succeed in real estate they must have a "Power Team," consisting of a lender, real estate broker, contractor, title company, property manager and perhaps other real estate professionals, depending upon the nature of the real estate investment. At MU, students are introduced to representatives of Gulfstream (contractor), United Mortgage (lender), Douglas Realty (real estate broker and property manager), and Paradise (title company) who "teach" them about their areas of expertise in the real estate business.

65. Near the end of the three day course the MU students are taken on a bus tour through Cape Coral and show potential real estate investments by MU instructors employed by one or more of the Defendants and acting on behalf of each of the Defendants. The trip starts with a viewing of distressed homes in low income areas that might be purchased as a "fixer-upper." After seeing small homes in disrepair in poorer neighborhoods, the MU students are taken to a middle income, well-maintained neighborhood and shown a newly constructed, model home built by Gulfstream. The contrast makes the Gulfstream home appear to be a very attractive investment.

66. Representatives of the Defendants, such as Brad Williams and Kevin Haag, tell the MU students that "Russ" and the MU Partners have set up a "turnkey" investment program exclusively for MU students which is so lucrative that it will pay back every dollar spent by the student for the intensified real estate training at MU and give them capital to jumpstart their real estate investing careers. They describe this "exclusive" turnkey investment as one or more

Gulfstream homes similar to the one shown on the tour, which will be built on "prime" lots selected by Douglas Realty in comparable neighborhoods. They represent to the MU students that this investment opportunity meets all of the conditions for making money in real estate with little risk and that the MU Partners are making this exclusive investment opportunity available only for a limited time, so that they need to purchase quickly to reserve a spot in the investment program. This exclusive investment program, (the "MU-Program"), includes a home built by Gulfstream, financed by or through United Mortgage, on a "prime" lot expertly located by Douglas Realty, titled through the expertise of Paradise Title, sold at a price $50,000 to $70,000 below the "current appraised value" of the property and managed and marketed through the expert property management and real estate brokering services of Douglas Realty. MU students are asked to rely upon the expertise of MU, its faculty and partners, to (a) select a "prime" lot in a neighborhood comparable to the one in which the Gulfstream model was shown, (b) select and obtain the best, most appropriate financing, (c) build a well constructed home that meets the specifications furnished by the MU Partners to the MU students, and (d) market the property for sale and/or rent by Gulfstream Realty at or above the appraised values represented to the MU students. The MU Partners also represent that they will not overbuild MU Program homes in a neighborhood so that MU students who purchase the turnkey properties will not have to compete with other MU students to resell their investment property.

67. The Defendants pressure the MU students to make a quick decision to invest, representing that there are only a limited number of spots in the investment program available. They also offer discounts to the students if they make an immediate commitment to purchase. The MU students are required to put very little of their own money down, which meets one of the criteria for a prudent real estate investment as instructed in the MU real estate course. Pursuant to the MU Program, the cost of the lot and the construction is financed through a one year construction loan, which is then refinanced after construction is completed through

permanent financing available through United Mortgage. All of the financing is selected and obtained by the MU Partners for the MU students. In many cases representatives of the MU Partners represent that Gulfstream pays a substantial portion of the interest on the construction loan. They further represent to the MU students that while the construction is proceeding, Douglas Realty will use its expertise and "excellent" reputation in the Southwest Florida real estate market to sell the home at a substantial profit before the MU student is required to obtain permanent financing to pay off the construction loan. To further induce the MU student to invest, the MU Partners further represent that, in the event the MU student chooses to hold the property, Gulfstream Realty will lease and manage the MU Property at lease rates that will pay for all but $500 per month of the monthly payments for mortgage, taxes and insurance. The MU Partners further represent to the MU students that the MU Partners will not over-build these homes in an area, thereby avoiding competition among MU students with each other to resell their homes. The students are further counseled by their MU instructors and mentors, who work for and on behalf of the Defendants, that since they are purchasing these homes at a price so far below their "current appraised value," they should buy at least two of them if they can qualify for the financing.

68. Upon an MU student's commitment to purchase one or more MU Program homes, the MU Partners send a package of documents to the student to sign in blank, including contracts to buy a lot, to pay Gulfstream to build the home and to hire Douglas Realty as the exclusive realtor and property manager for the property. The Gulfstream Partners instruct the students to immediately return the documents signed in blank to them. The Gulfstream Partners later fill in the contract to buy the lot with a legal description, street address, price, directions for the payment of commissions to various MU Partners, and an obligation to purchase without any condition for financing. Likewise, the construction contract is later filled out by the MU Partners with the lot address and legal description, a construction price and an obligation to pay for the

construction without any contingency for financing. The MU Partners also direct the MU students to sign a mortgage brokerage contract with United, which contains the fraudulent appraisal price for the property to be financed. After the student has signed documents purporting to create an obligation to buy a lot and pay to build the investment home, United Mortgage, acting for itself and as agent for the other Defendants, selects and arranges financing through which the MU student will pay other Defendants to purchase the lot and construct the investment home. United Mortgage represents to the MU students that this is the best financing available for persons like the MU students with credit ratings in the 700's. United Mortgage provides the MU students with loan documents, prepared by United Mortgage, which contain a fraudulent appraisal price for the home with the lot. The Defendants set the appraisal price by first determining how much money the Defendants would make through the sale of the lot, the construction of the house and the financing of the purchase, including excessive fees. This calculation in turn determines the amount of the note and mortgage for the one year construction loan, which represented the purchase price charged to the MU student. After the Defendants knew that amount, they then arranged for an appraisal which would set the value of the property high enough so that the construction loan amount would be 80% of the appraised value. The MU Partners' fraudulent appraisal value is important to the fraudulent scheme because it facilitates the payment for the overpriced lot, the excessive price for the construction of the home and the excessive fees and charges paid upon closing to the Defendants.

69.     United Mortgage and CLC then directed the MU students to sign construction loan documents, prepared, selected or approved by United Mortgage, which represented that the home under construction would be the borrowers' "primary" residence, even though United Mortgage and CLC knew that the home was being built for investment purposes. When United Mortgage and CLC were questioned about this, they told MU students to disregard the primary residence language and that the lender had taken care of that issue for them. United Mortgage

later also provided MU students with permanent financing documentation which required them to represent that the home was their "second home," even though United Mortgage knew that the property was investment property. Upon information and belief, United Mortgage and CLC documented the financing this way to obtain a lower rate of interest, which reduced the interest payments made by Gulfstream and helped to insure that the students would qualify for the loans, and to lead purchasers of the mortgages and notes to believe that these were not investment properties and therefore were less risky, enabling the lenders to sell the mortgages and realize their profits on the transactions.

70.     The Plaintiffs are former MU students targeted by the Defendants and to whom the Defendants' representatives made the above described representations. The Plaintiffs enrolled in and attended the above described real estate courses, participated in the MU Program and trusted their instructors and the MU Partners to act in their best interests throughout each phase of the MU Program, including the selection of the lot and financing, the setting of the purchase price and the construction, marketing and management of the investment property. The Plaintiffs invested their money in the "MU-Program," buying one or more properties from and through the Defendants with financing provided by or through the Defendants. The Defendants' representatives selected the lots and the financing for each of the Plaintiffs. The lots and homes purchased by the Plaintiffs through the MU Program are referred to as the "MU Properties." A list of the street addresses and legal descriptions of the MU Properties is attached as Exhibit A to this Complaint.

71.     As described more fully below, the "current appraised value" of the properties was grossly and fraudulently overstated by the Defendants when they induced the Plaintiffs to invest in the MU Program. Furthermore, the Defendants did not have "prime" lots available and did not obtain "prime" lots for construction of these homes. Instead, the Defendants purchased undesirable lots, in remote locations, with poor roads and without curbs, sidewalks or street

lighting, in some high crime, highly vandalized areas, with only well water and septic tanks available, and then marked up the lot prices thousands to tens of thousands of dollars and resold them to the MU students/Plaintiffs for an undisclosed profit. Moreover, the MU Program homes were over built, so that in some instances, a single street block contains five or more of the same model home, all of which were built and listed for sale at or about the same time. The Defendants also did not limit participation the MU Program to only MU students, creating even more competition for purchasers of the investment homes. The result of such overbuilding is a glut of MU homes on the market, in undesirable locations, offered at prices for as much as $100,000 over their true current appraised values. These MU homes cannot be sold, except at a crippling loss to their owners, and cannot be rented for a reasonable rental amount.

72.     The financing selected for the Plaintiffs by United Mortgage and the MU Partners is based upon inflated, fraudulent appraisal values of the MU Properties. The rate of interest charged on the construction loans is excessive in light of the Plaintiffs' high credit scores and the points paid by the Plaintiffs to discount the loan rates. The closing costs on the construction loan are far in excess of closing costs typically charged for loans such as those arranged for the Plaintiffs to purchase the MU Properties.

73.     The MU Partners and CLC have attempted to coerce the Plaintiffs to close on permanent financing, falsely representing to the Plaintiffs that the MU Properties have a current appraised value in excess of the construction loan amounts. Appraised values determined by independent appraisers acting either for potential third party lenders or the MU Students/Plaintiffs are substantially below the appraised prices being represented by the Defendants and below the construction loan amounts, so that the MU Properties cannot sufficiently collateralize refinancing to pay off the construction loans.

74.     The Plaintiffs have retained the undersigned counsel and agreed to pay them a reasonable fee for their services.

75. All conditions precedent to this action have been waived, performed or have occurred.

**COUNT I**
**BREACH OF FIDUCIARY DUTY**
**MU PARTNERS**

76. The Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-75, above.

77. At all material times the MU Partners owed a fiduciary duty to the Plaintiffs, to act in their best interests.

78. United Mortgage acted as a mortgage broker in the transactions with the Plaintiffs and arranged all of the financing for the purchase of the MU Properties.

79. Douglas Realty acted as real estate broker on behalf of the Plaintiffs in connection with the selection and purchase of lots for building MU Program homes and for the marketing and management of MU Properties.

80. Paradise acted as the title company on behalf of the Plaintiffs in connection with the closings of the MU Properties.

81. The MU Partners breached their fiduciary duty by:

   a. misrepresenting the appraised value of the MU Properties;

   b. misrepresenting the rental rates of the MU Properties;

   c. selecting undesirable lots and purchasing them directly or through a holding company and reselling them to the Plaintiffs at a substantial profit to the MU Partners;

   d. selecting lots for the Plaintiffs that were not in neighborhoods comparable to the sample neighborhood shown to the Plaintiffs during the real estate tour as part of the third day of teaching in the MU course;

e.  overbuilding the MU Properties to reduce the cost to the MU Partners and Greenbriar REH of purchasing the lots and building the houses, without passing any of the cost savings on to the Plaintiffs, and then glutting the market with the same or similar floor plan homes;

f.  charging excessive real estate commissions, which were passed on to the Plaintiffs;

g.  fraudulently creating false loan documents which misstated the purpose for which the homes were being constructed;

h.  misrepresenting the meaning of the loan documents to the Plaintiffs;

i.  fraudulently creating false loan documents to finance the purchase of the MU Properties, which were based upon fraudulent and inflated appraisals;

j.  charging excessive closing costs to the Plaintiffs;

k.  failing to obtain the best available financing at competitive loan rates available on the market to borrowers who, like the Plaintiffs, have high credit scores; and

l.  charging loan discount fees to the Plaintiffs for a discount on the loan interest rate and then failing to discount the interest rate.

82.  As a direct and proximate result of the MU Partners breach of fiduciary duty the Plaintiffs have been damaged.

**WHEREFORE**, the Plaintiffs demand judgment in their favor and against the MU Partners for damages, interest, costs and all other and further relief which this court deems just.

**COUNT II**
**BREACH OF FIDUCIARY DUTY**
**CLC**

83.  The Plaintiffs, Howard Amberg, William Bacigulupo, Jonathan and Cynille Bates, Peggy A. Bedwell, Irma Farmer, Robert and Karen Forscutt, Ursula M. Fritsch, Bruce and

Mitzi Ghiloni, Noemi and George Hernandez, Astor HoSang, Wayne I. and Ruth Kacher, Kenneth and Catherine Kapp, Michael and Margaret Lamb, Frederick Laubach, Peter and Lynda Lewis, Donald and Lauren Lodarek, Andrew Colin Long, Donald and Nina H. Long, Debra and Thomas McCann, Richard and Tari Lee Marek, Jeff and Elizabeth Montgomery, Alyce and Patrick Sheehan, Richard S. and Carol A. Shifflett, Merritt Lawrence Silcox, William and Kathleen Torlucci, James E. Wolfe, Robert and Joan Wright (the "CLC Plaintiffs"), reallege the allegations of paragraphs 1-75 above as if they were fully set forth herein.

84.     CLC acted as mortgage lender on MU Properties for the CLC Plaintiffs.

85.     CLC at all material times was aware of and a participant in the MU Program and allowed United Mortgage and the MU Partners to act on behalf of CLC to induce prospective real estate investors to obtain mortgage lending from CLC for construction loans so that CLC could make a profit on each such construction loan.  Consequently, CLC owed a fiduciary duty to the CLC Plaintiffs to act in their best interests.

86.     CLC breached its fiduciary duty to the CLC Plaintiffs by:

a.   Making a construction loan to the CLC Plaintiffs and purporting to obligate them to repay that loan, when the loan was based upon a grossly inflated and fraudulent appraised value of the property and failing to verify the true appraised value of such property;

b.   Directing the CLC Plaintiffs to sign loan documents which represented that the MU Property which they were purchasing and constructing was their "primary" residence when CLC knew it was investment property;

c.   Charging the CLC Plaintiffs a rate of interest on their construction loans that far exceeded the market rate for borrowers with credit scores as high as those of the CLC Plaintiffs; and

d.   Participating in the fraudulent scheme of the MU Partners as described above.

87.     As a direct and proximate result of CLC's breach of fiduciary duty the CLC Plaintiffs have been damaged.

**WHEREFORE,** the CLC Plaintiffs demand judgment in their favor and against CLC for damages, interest, costs and all other and further relief which this court deems just.

### COUNT III
### CONSTRUCTIVE FRAUD
### MU PARTNERS

88.     The Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-82 above.

89.     The MU Partners abused their fiduciary relationship with the Plaintiffs through their acts as described above.  The MU Partners committed a constructive fraud against the Plaintiffs by abusing their fiduciary relationship with the Plaintiffs at the expense of the Plaintiffs, as more fully described above.

90.     As a direct and proximate result of the constructive fraud of the MU Partners, the Plaintiffs have been damaged.

**WHEREFORE**, the Plaintiffs demand judgment against the MU Partners, the Lenders, Huron and EMC for rescission of the contracts to purchase the MU Properties and the promissory notes and mortgages secured by the MU Properties and imposition of a constructive trust for the benefit of the Plaintiffs upon any money paid to the MU Partners, the Lenders or EMC pursuant to the contracts to purchase, notes or mortgage transactions and any proceeds or profits obtained from the use, lease, sale or any other beneficial use of the MU Properties by the MU Partners, the Lenders or their assigns, plus rescissionary damages, interest, costs and any other relief this Court deems to be just and equitable.

## COUNT IV
## CONSTRUCTIVE FRAUD
## CLC

91.     The CLC Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-87 above.

92.     CLC abused its fiduciary relationship with the CLC Plaintiffs through its acts as described above. CLC committed a constructive fraud against the CLC Plaintiffs by abusing its fiduciary relationship with the CLC Plaintiffs at the expense of the CLC Plaintiffs, as more fully described above.

93.     As a direct and proximate result of the constructive fraud of CLC, the CLC Plaintiffs have been damaged.

94.     As a result of the constructive fraud of CLC and the MU Partners acting on behalf of CLC, CLC obtained mortgages and promissory notes secured by the MU Properties.

95.     It would be unjust and against equity to allow CLC to enforce the mortgages and promissory notes against the CLC Plaintiffs and to obtain ownership of the real property securing those mortgages.

**WHEREFORE**, the CLC Plaintiffs demand judgment against CLC and Huron for rescission of the promissory notes and mortgages secured by the MU Properties and imposition of a constructive trust for the benefit of the CLC Plaintiffs upon any money paid to CLC by the CLC Plaintiffs pursuant to the note or mortgage transactions and any proceeds or profits obtained from the use, lease, sale or any other beneficial use of the MU Properties by CLC or its assigns, plus rescissionary damages, interest, costs and any other relief this Court deems to be just and equitable.

## COUNT V
## VIOLATION OF MORTGAGE BROKERAGE AND LENDING LAWS
## UNITED MORTGAGE AND KEVIN CARAOTTA

96.     The Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-87 above.

97.     United Mortgage is a mortgage broker within the meaning of Chapter 494 Florida Statutes.

98.     Kevin Caraotta, as the president of United Mortgage, is liable with United Mortgage for its participation in the fraudulent scheme described above.

99.     Kevin Caraotta completed the loan applications and supervised and approved the preparation of the loan documents which contained the fraudulent appraisals referred to above.

100.     CLC is a mortgage lender within the meaning of Chapter 494 Florida Statutes.

101.     United Mortgage and Kevin Caraotta, by their participation in the fraudulent scheme described above, have violated §494.0025(4) Florida Statutes.

102.     The mortgage transactions described above secured by the MU Properties were made in violation of §494.0025(4) Florida Statutes.

103.     United Mortgage and Kevin Caraotta are jointly and severally liable to the Plaintiffs pursuant to §494.0019(1) Florida Statutes for the damages incurred by the Plaintiffs.

**WHEREFORE**, the Plaintiffs demand judgment against United Mortgage and Kevin Caraotta for damages, interest, costs and all other and further relief which this court deems just.

## COUNT VI
## VIOLATION OF MORTGAGE BROKERAGE AND LENDING LAWS
## CLC

104.     The CLC Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-89 above.

105.     CLC is a mortgage lender within the meaning of Chapter 494 Florida Statutes.

106. CLC, by its participation in the fraudulent scheme described above, has violated §494.0025(4) Florida Statutes.

107. The mortgage transactions described above secured by the MU Properties were made in violation of §494.0025(4) Florida Statutes.

108. CLC, United Mortgage and Kevin Caraotta are jointly and severally liable to the Plaintiffs pursuant to §494.0019(1) Florida Statutes for the damages incurred by the CLC Plaintiffs.

**WHEREFORE,** the CLC Plaintiffs demand judgment against CLC for damages, interest, costs and all other and further relief which this court deems just.

**COUNT VII**
**VIOLATION OF FLORIDA LAND SALES PRACTICES ACT**
**MU PARTNERS**

109. The Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-75, above.

110. The MU Partners and Greenbriar REH are "subdividers" within the meaning of §498.005(20) Florida Statutes in that they are engaged in the disposition of subdivided lands through the MU Program either directly, indirectly, or through the services of an employee, agent, or independent contractor.

111. The MU Properties are subdivided lands within the meaning of §498.005(21) Florida Statutes.

112. The MU Partners sold the MU Properties to the Plaintiffs through the MU Program which is a common promotional plan as defined in §498.005(22) Florida Statutes. The MU Partners sold or offered to sell more than 50 properties in Florida as part of the MU Program.

113. The MU Partners violated §498.023 by selling, or participating in the sale of, the MU Properties to the Plaintiffs:

a.  without a valid order of registration for the MU Properties;

b.  without delivering a public offering statement to the Plaintiffs prior to their purchase of the MU Properties;

c.  without affording the Plaintiffs a reasonable opportunity to examine the public offering statement prior to the disposition; and

d.  without a contract and public offering statement authorizing the Plaintiffs to cancel the agreement without cause until midnight of the seventh business day after he or she executes the contract.

114.    The MU Partners falsified material facts in disposing of the MU Properties as described above.

115.    The MU Partners violated §498.022(1) Florida Statutes by their conduct as described above.

116.    Pursuant to §498.061 Florida Statutes, the MU Partners are liable to the Plaintiffs for damages, including a refund of the purchase price of the lots sold to the Plaintiffs through the MU Program, interest at the rate of 9 percent per annum from the date of purchase, taxes paid on the lots, court costs and attorneys fees.

117.    Russ Whitney materially participated in the disposition of the MU Properties by actively promoting the MU Program to the MU students, authorizing the MU Partners to use his name as an endorser of the MU Program, writing letters to MU students and encouraging their continuing involvement in the MU Program.  Whitney partnered with the MU Partners to sell land in Florida to MU students, including the Plaintiffs.  Whitney also controls, directly or indirectly, one or more of the MU Partners and Greenbriar, REH.

118.    John Kane materially participated in the disposition of the MU Properties by actively promoting the sale of the lots through the MU Program and acting as a realtor in the transactions to purchase the lots on behalf of the MU students and receiving money from the sale

of lots to the MU students as a real estate commission. Kane partnered with the MU Partners to sell land in Florida to MU students, including the Plaintiffs.

119.     Kevin Caraotta materially participated in the disposition of the MU Properties by arranging the financing for the purchase of the lots and including the fraudulent, inflated appraisal values in the loan documentation.

120.     Whitney, Kane and Caraotta are jointly and severally liable to the Plaintiffs with the other MU Partners pursuant to §498.061(3) Florida Statutes.

**WHEREFORE**, the Plaintiffs demand judgment against the MU Partners and Kevin Caraotta for damages, including a refund of the purchase price of the lots sold to the Plaintiffs through the MU Program, interest at the rate of 9 percent per annum from the dates of purchase, taxes paid on the lots, court costs, attorneys fees and all other and further relief which this court deems just.

**COUNT VIII**
**VIOLATION OF FLORIDA LAND SALES PRACTICES ACT**
**GREENBRIAR REH**

121.     The Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-75 and 110-120 above.

122.     Greenbriar REH is a "subdivider" within the meaning of §498.005(20) Florida Statutes in it is engaged in the disposition of subdivided lands through the MU Program either directly, indirectly, or through the services of an employee, agent, or independent contractor.

123.     The MU Properties are subdivided lands within the meaning of §498.005(21) Florida Statutes.

124.     Greenbriar REH sold the MU Properties to the following Plaintiffs through the MU Program which is a common promotional plan as defined in §498.005(22) Florida Statutes: Glenn Acciard, Howard Amberg, William Bacigalupo, Jonathan and Cynille Bates, Irma Farmer, Robert and Karen Forscutt, Ursula M. Fritsch, Bruce and Mitzi Ghiloni, Noemi and George

Hernandez, Astor HoSang, Wayne I. and Ruth Kacher, Kenneth and Catherine Kapp, Michael and Margaret Lamb, Peter and Lynda Lewis, Donald and Lauren Lodarek, Donald and Nina H. Long, Richard and Tari Lee Market, Debra and Thomas McCann, Jeff and Elizabeth Montgomery, Alyce and Patrick Sheehan, Richard S. and Carol A. Shifflett, William and Kathleen Torlucci, and Robert and Joan Wright (hereinafter, the "Greenbriar REH Plaintiffs"). The MU Partners and Greenbriar REH sold or offered to sell more than 50 properties in Florida as part of the MU Program.

125.    Greenbriar REH violated §498.023 by selling, or participating in the sale of, the MU Properties to the Greenbriar REH Plaintiffs:

        a.  without a valid order of registration for the MU Properties;

        b.  without delivering a public offering statement to the Plaintiffs prior to their purchase of the MU Properties;

        c.  without affording the Plaintiffs a reasonable opportunity to examine the public offering statement prior to the disposition; and

        d.  without a contract and public offering statement authorizing the Plaintiffs to cancel the agreement without cause until midnight of the seventh business day after he or she executes the contract.

126.    Greenbriar REH, through the MU Partners, falsified material facts in disposing of the MU Properties as described above.

127.    Pursuant to §498.061 Florida Statutes, Greenbriar REH is liable to the Greenbriar REH Plaintiffs for damages, including a refund of the purchase price of the lots sold to the Greenbriar REH Plaintiffs through the MU Program, interest at the rate of 9 percent per annum from the date of purchase, taxes paid on the lots, court costs, attorneys fees and all other and further relief which this court deems just.

128.    Greenbriar REH materially participated in the disposition of the MU Properties by purchasing 150 lots in Lehigh Acres for resale to the MU students at a substantially marked up price and then reselling those lots to the Greenbriar REH Plaintiffs and other MU students at a substantial profit per lot. In many cases Greenbriar REH had contracts to sell the lots which had been executed by the MU student purchaser pursuant to the instruction of the MU Partners before Greenbriar REH owned the lot. After acquiring such contracts to purchase, Greenbriar REH then purchased the lots in bulk and resold them to the MU students with whom it had contracts for a substantial profit. In doing so, Greenbriar acted both for itself and as an agent or partner of the MU Partners. Greenbriar REH is jointly and severally liable with the MU Partners for the disposition of lots to the Greenbriar REH Plaintiffs.

129.    Greenbriar REH violated §498.022(1) Florida Statutes by its conduct as described above.

**WHEREFORE**, the Greenbriar REH Plaintiffs demand judgment against Greenbriar REH for damages, including a refund of the purchase price of the lots sold to the Greenbriar REH Plaintiffs through the MU Program, interest at the rate of 9 percent per annum from the dates of purchase, taxes paid on the lots, court costs, attorneys fees and all other and further relief which this court deems just.

## COUNT IX
## VIOLATION OF FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
## MU PARTNERS

130.    The Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-75 above.

131.    The MU Partners have violated the Florida Unfair and Deceptive Trade Practices Act, § 501.201 et seq. Florida Statutes ("FDUPTA") by using deceptive practices to sell and finance the MU Properties as set forth more fully above.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against the MU Partners Lenders, Huron and EMC for (1) damages, attorney fees and costs as provided by § 501.2105 Florida Statutes; (2) temporary and permanent injunctive relief pursuant to § 501.211 Florida Statutes enjoining the MU Partners, Lenders, Huron and EMC from enforcing or foreclosing upon any contracts, notes or mortgages between them and the Plaintiffs pertaining to the MU Properties and rescinding all such contracts, notes and mortgages; (3) a declaratory judgment declaring that the acts of the MU Partners as set forth above violate FDUPTA; and (4) such other and further relief as the court deems proper.

**COUNT X**
**VIOLATION OF FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**
**CLC**

132.    The CLC Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-75, 84-87 and 105-108 above.

133.    CLC has violated the Florida Unfair and Deceptive Trade Practices Act, § 501.201 et seq. Florida Statutes ("FDUPTA") by using deceptive practices to finance the purchase of the MU Properties as set forth more fully above.

**WHEREFORE**, the CLC Plaintiffs demand judgment in their favor and against CLC and Huron for (1) damages, attorney fees and costs as provided by § 501.2105 Florida Statutes; (2) temporary and permanent injunctive relief pursuant to § 501.211 Florida Statutes enjoining CLC and Huron from enforcing or foreclosing upon any contracts, notes or mortgages between them and the Plaintiffs pertaining to the MU Properties and rescinding all such contracts, notes and mortgages; (3) a declaratory judgment declaring that the acts of CLC as set forth above violate FDUPTA; and (4) such other and further relief as the court deems proper.

## COUNT XI
## VIOLATION OF FLORIDA UNFAIR
## AND DECEPTIVE TRADE PRACTICES ACT
## GREENBRIAR REH

134. The Greenbriar REH Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-75 and 125-128 above.

135. Greenbriar REH has violated the Florida Unfair and Deceptive Trade Practices Act, § 501.201 et seq. Florida Statutes ("FDUPTA") by using deceptive practices to sell the MU Properties as set forth more fully above.

**WHEREFORE,** the Greenbriar REH Plaintiffs demand judgment in their favor and against Greenbriar REH for (1) damages, attorney fees and costs as provided by § 501.2105 Florida Statutes; (2) temporary and permanent injunctive relief pursuant to § 501.211 Florida Statutes enjoining Greenbriar REH from enforcing any contracts between them and the Plaintiffs pertaining to the MU Properties and rescinding all such contracts; (3) a declaratory judgment declaring that the acts of Greenbriar REH as set forth above violate FDUPTA; and (4) such other and further relief as the court deems proper.

## COUNT XII
## FRAUD IN THE INDUCMENT
## MU PARTNERS

136. The Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-75 above.

137. The MU Partners made representations of material fact to the Plaintiffs concerning the MU Program and MU Properties, including:

    a. That the MU Properties had the appraised values that the MU Partners were representing to the Plaintiffs;

b. That the Plaintiffs could reasonably expect the MU Properties to rent at the rates that the MU Partners were representing to the Plaintiffs upon completion of construction of the homes;

c. That the MU Partners intended to purchase choice lots for the Plaintiffs in a comparable neighborhood to the neighborhood shown to the Plaintiffs during the tour referenced in paragraph 65 above;

d. That the MU Partners would not saturate the market and overbuild in neighborhoods thereby forcing MU students to compete with other MU students to resell their investment homes; and

e. That the MU Partners intended to obtain suitable financing at the best market rates available to finance the purchase of the MU Properties.

f. That investment in the MU Program was exclusive and limited only to MU students; and

g. That the MU Partners intended to look out for the best interests of the Plaintiffs.

138. The representations of the MU Partners were false when they were made.

139. The MU Partners made these representations to the Plaintiffs during the three day real estate course that the Plaintiffs attended in Cape Coral, Florida at the offices of Whitney Educational or otherwise before the Plaintiffs invested in the fraudulent MU Enterprise. The MU Partners have the dates when the Plaintiffs attended this course in their records. The MU Partners also included the false representations about the appraised values on Investment Program handouts, Good Faith Estimates for financing and on applications for financing which United Mortgage prepared, all of which the MU Partners furnished to the Plaintiffs.

140. The MU Partners did not intend to purchase choice lots in a comparable neighborhood. Instead, they intended to find cheap lots which the MU Partners or their agents

could buy and resell to the Plaintiffs at a substantial profit regardless of the lot's suitability for the Plaintiffs' investment purposes.

141.    The MU Partners did not intend to refrain from overbuilding in a neighborhood. Instead, they intended to buy numerous lots close together to save on lot purchase and home building costs, which savings they intended to keep for themselves as additional profit on their transactions with the Plaintiffs.

142.    The MU Partners did not intend to obtain suitable financing at the best market rates available. Instead, they intended to overcharge the Plaintiffs on closing costs and interest to increase their profits on the financing at the Plaintiffs' expense.

143.    The MU Partners did not intend to limit purchase of homes and lots in the MU Program to only MU students and sold to others, thereby creating more competition for sales of the MU Properties.

144.    The MU Partners did not intend to look out for the best interests of the Plaintiffs. Instead they intended to look out for their own best interests, to maximize their own profits at the expense of the Plaintiffs.

145.    The MU Partners knew that the representations referenced above were false when they were made.

146.    The MU Partners made the representations referenced above with the intent and for the purpose of inducing the Plaintiffs' reliance.

147.    The Plaintiffs justifiably relied to their detriment on these misrepresentations by entering into contracts to purchase the MU Properties and to finance their purchase of the MU Properties and paying money to one or more of the MU Partners and to third parties for such purchase and financing.

148.    As a direct and proximate result of the MU Partners' fraud as set forth above the Plaintiffs have been damaged.

149.    The Plaintiffs have demanded rescission of the contracts to purchase, the notes and the mortgages entered into for the purchase and financing of the MU Properties.

**WHEREFORE**, the Plaintiffs demand judgment in their favor and against the MU Partners, Lenders, Huron and EMC for rescission of the contracts to purchase the MU Properties, the promissory notes and the mortgages entered into for the financing of the MU Properties, rescissionary damages, money damages, costs, interests and all other and further relief that this court deems just.

### COUNT XIII
### FRAUD IN THE INDUCMENT
### CLC

150.    The CLC Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-75 and 137-149 above.

151.    The representations referenced above were made on behalf of CLC.

152.    Before CLC entered into promissory note and mortgage transactions with the CLC Plaintiffs, CLC knew that the MU Partners made these representations and knew that such representations were false.

153.    CLC intended that these representations induce the CLC Plaintiffs to enter into promissory note and mortgage transactions with CLC.

154.    The CLC Plaintiffs justifiably relied upon these representations to their detriment by entering into promissory notes and mortgage transactions with CLC and paying money to CLC and others.

155.    As a direct and proximate result of the fraud of CLC the CLC Plaintiffs have been damaged.

**WHEREFORE**, the CLC Plaintiffs demand judgment in their favor and against CLC and Huron for rescission of the promissory notes and the mortgages entered into for the

financing of the MU Properties, rescissionary damages, money damages, costs, interests and all other and further relief that this court deems just.

**COUNT XIV**
**FRAUD IN THE INDUCMENT**
**GREENBRIAR REH**

156.    The Greenbriar REH Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-75 and 137-149 above.

157.    The representations referenced above were made on behalf of Greenbriar REH.

158.    Before Greenbriar REH entered into contracts with the Greenbriar REH Plaintiffs to sell lots to them, Greenbriar REH knew that the MU Partners made these representations and knew that such representations were false.

159.    Greenbriar REH intended that these representations induce the Greenbriar REH Plaintiffs to enter into contracts to purchase lots from Greenbriar REH.

160.    The Greenbriar REH Plaintiffs justifiably relied upon these representations to their detriment by entering into contracts to purchase and purchasing lots from the Greenbriar REH and paying money to Greenbriar REH and third parties.

161.    As a direct and proximate result of the fraud of Greenbriar REH the Greenbriar REH Plaintiffs have been damaged.

**WHEREFORE**, the Greenbriar REH Plaintiffs demand judgment in their favor and against Greenbriar REH for rescission of the contracts to purchase lots from Greenbriar REH, rescissionary damages, money damages, costs, interests and all other and further relief that this court deems just.

**COUNT XV**
**FRAUDULENT LIEN**
**GULFSTREAM**

162.    The Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-75 and 137-149, above.

163. Gulfstream has filed liens upon the MU Properties listed in Exhibit B to this Complaint and has not released such liens. The owners of those properties are listed in Exhibit B and are referred to as the Gulfstream Plaintiffs.

164. The liens filed by Gulfstream against the MU Properties are fraudulent liens filed in violation of §713.31 Florida Statutes in that the Gulfstream Plaintiffs do not owe any money to Gulfstream.

165. Pursuant to §713.31(2)(c) Florida Statutes the Gulfstream Plaintiffs have a right to discharge of the liens and to recover damages from Gulfstream including but not limited to court costs, clerks fees, attorneys fees, and punitive damages.

**WHEREFORE**, the Gulfstream Plaintiffs demand judgment against Gulfstream discharging the liens filed against the MU Properties, and awarding damages to the Gulfstream Plaintiffs, including costs, clerk's fees and attorneys' fees.

## COUNT XVI
## CIVIL CONSPIRACY TO DEFRAUD
## MU PARTNERS

166. The Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-165 above.

167. The MU Partners combined and conspired to create and maintain the MU Enterprise as alleged above for the purpose of committing the frauds alleged above upon the Plaintiffs.

168. Defendants committed one or more acts in furtherance of the conspiracy in Lee County, Florida by obtaining fraudulent appraisals, by preparing and submitting fraudulent loan documents, by making false representations of material fact to Plaintiffs, and by filing fraudulent liens, all as previously alleged.

169. As a direct and proximate result of the conspiracy and the wrongful actions taken in furtherance of the conspiracy, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs demand judgment against the MU Partners, jointly and severally, awarding Plaintiffs money damages, interest and costs of suit.

**COUNT XVII**
**FLORIDA RICO CONSPIRACY**
**MU PARTNERS**

170. The Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-165 above.

171. Each of the MU Partners is a "person" as used at §772.103, Florida Statutes.

172. The MU Enterprise is an "enterprise" as defined at §772.102(3), Florida Statutes.

173. The MU Partners combined and conspired to engage in a pattern of conduct to fraudulently induce Plaintiffs to purchase the MU Properties and to secure their purchase with mortgages against the MU Properties.

174. The actions of the MU Partners in furtherance of the conspiracy involved distinct and independent criminal acts. They were neither isolated nor sporadic events, but involved the regular and repeated violation of law to accomplish the MU Partners' desired ends in the course of the continuing business of the racketeering enterprise defined above. The criminal acts were related to each other by virtue of (a) common participants, (b) common victims, (c) common methods of commission, and (d) the common purpose and common result of inducing the Plaintiffs to purchase and mortgage the MU Properties.

175. In doing so, the MU Partners repeatedly violated §817.08, Florida Statutes and therefore continually engaged in a "pattern of criminal activity" within the meaning of §772.102(4), Florida Statutes.

176. Moreover, in furtherance of the conspiracy to defraud, one or more of the MU Partners prepared and sent through the United States Mail advertisements or literature to induce the Plaintiffs and others similarly situated to invest in the MU Properties and to finance the investment through the MU Enterprise or its agents. In sending such materials through the

United States Mail in furtherance of the conspiracy, one or more of the MU Partners repeatedly violated 18 U.S.C. §1341 and therefore continually engaged in a "pattern of criminal activity" within the meaning of §772.102(4), Florida Statutes.

177. The MU Partners therefore unlawfully and willfully combined, conspired, confederated and agreed with each other to violate §817.08, Florida Statutes and 18 U.S.C. §1341, that is, to conduct and participate, directly or indirectly, in the conduct of the affairs of the racketeering enterprise of defrauding the Plaintiffs as described above, all in violation of §772.103(4), Florida Statutes.

**WHEREFORE**, the Plaintiffs demand judgment against the MU Partners, jointly and severally, for damages, including treble damages, prejudgment interest, costs, attorney's fees and such further relief that is just and appropriate.

### DEMAND FOR JURY TRIAL

The Plaintiffs demand a trial by jury on all claims and issues so triable.

DATED:        March 13, 2007.

G. Donovan Conwell, Jr.
Florida Bar No: 0371319
G. Wrede Kirkpatrick
Florida Bar No. 984116
**CONWELL SUKHIA & KIRKPATRICK, P.A.**
2701 North Rocky Point Drive, Suite 1200
Tampa, FL 33607
(813) 282-8000; (813) 282-8800 facsimile
Attorneys for Plaintiff
dconwell@csklawfirm.com
wkirkpatrick@csklawfirm.com

## Plantiff's Exhibit "A"

| | Property Address | Legal Description |
|---|---|---|
| Acclard, Glenn | 1826 Jacinto Ave, Lehigh Acres | Greenbriar Unit 55, Blk 319 Lot 8 PB 27 PG 78 |
| | 1823 Jacinto Ave, Lehigh Acres | Greenbriar Unit 55, Blk 325 PB 327 PG 79 Lot 11 |
| Amberg, Howard | 522 Woodview Drive, Lehigh Acres | Greenbriar Unit 29 PT N Blk 193 PB 27 PG 48 Lot 3 |
| America, Anne and John | 522 Cypress Ave S, Lehigh Acres | Lehigh Acres Unit 7, Blk 38 PB 15 PG 137 Lot 6 |
| Bacigalupo, William | 1842 Jovita Ave, Lehigh Acres | Greenbriar UT 58 PT W Blk 344 PB 27 PG 82 Lot 4 |
| | 727 Burns Ave, Lehigh Acres | Lehigh Acres Unit 7, Blk 34 PB 18 PG 60 Lot 1 |
| Bates, Jonathan and Cynille | 1838 Jovita Ave, Lehigh Acres | Greenbriar UT 58 PT W Blk 344 PB 27 PG 82 Lot 6 |
| | 1839 Jovita Ave, Lehigh Acres | Greenbriar Unit 55, Blk 329 PB 27 PG 79 Lot 11 |
| Bedwell, Peggy A. | 1374 Cathedall Ave, North Port | LOT 17 BLK 2392 49TH Add to Port Charlotte |
| Farmer, Irma | 1844 Jovita Avenue, Lehigh Acres | Greenbriar UT 58 PT W Blk 344 PB 27 PG 82 Lot 3 |
| Forscutt, Robert and Karen | 1818 Lockhaven Court, Lehigh Acres | Greenbriar UT 58 PT W Blk 344 PB 27 PG 82 Lot 16 |
| Fritsch, Ursula M. | 1820 Lockhaven Court, Lehigh Acres | Greenbriar UT 58 PT W Blk 344 PB 27 PG 82 Lot 15 |
| | 1822 Lockhaven Court, Lehigh Acres | Greenbriar UT 58 PT W Blk 344 PB 27 PG 82 Lot 14 |
| Ghiloni, Bruce and Mitzi | 1815 Laurie Street, Lehigh Acres | Greenbriar Unit 22 PT S Blk 135 PB 27 PG 35 Lot 3 |
| | 1816 Laurie Street, Lehigh Acres | Greenbriar Unit 22 PT S Blk 133 PB 27 PG 35 Lot 8 |
| Hernandez, Noemi and George | 1846 Novice Ave, Lehigh Acres | Greenbriar Unit 55, Blk 329 PB 27 PG 79 Lot 5 |
| Hershberger, Daniel | 2200 Robert Ave, Alva (Lehigh Acres) | Lehigh Acres Replat Unit 7 Blk 27 DB 263 PG 177 Lot 12 |
| HoSang, Astor | 669 Woodcrest Drive, Lehigh Acres | Greenbriar Unit 41 Blk 261 PB 27 PG 64 Lot 7 |
| | 1845 Jovita Avenue, Lehigh Acres | Greenbriar Unit 55 Blk 329 PB 27 PG 79 Lot 8 |
| Kacher, Wayne I. and Ruth | 2904 33rd St W, Lehigh Acres | Lehigh Acres Unit 4, Blk 39 PB 15 PG 62 Lot 13 |
| | 1817 Tomaso, Lehigh Acres | Greenbriar Unit 40 Blk 260 PB 27 PG 63 Lot 12 |
| Kapp, Kenneth and Catherine | 1833 Tomaso Ave, Lehigh Acres | Greenbriar Unit 40 Blk 260 PB 27 PG 63 Lot 20 |
| | 1833 Landale Loop, Lehigh Acres | Greenbriar UT 58 PT W Blk 344 PB 27 PG 82 Lot 32 |
| Lamb, Michael and Margaret | 1828 Rush Ave, Lehigh Acres | Greenbriar Unit 40 Blk 260 PB 27 PG 63 Lot 3 |
| | 681 Woodcrest Drive, Lehigh Acres | Greenbriar Unit 41 Blk 261 PB 27 PG 64 Lot 1 |
| | 682 Wentworth Drive, Lehigh Acres | Greenbriar UT 41 Blk 261 PB 27 PG 64 Lot 28 |
| | 1816 Tomaso Ave, Lehigh Acres | Greenbriar Unit 40 Blk 259 PB 27 PG 63 Lot 18 |
| Laubach, Debbie G. | 3414 26th St SW, Lehigh Acres | Lehigh Acres Unit 7 Blk 61 PB 15 PG 94 Lot 19 |
| Laubach, Frederick C. Jr. | 1507 Terry Ave, Lehigh Acres | Lehigh Acres Unit 1 Blk 5 PB 15 PG 94 Lot 4 |
| Lewis, Peter and Lynda | 1830 Tomaso Ave, Lehigh Acres | Greenbriar Unit 40 Blk 259 PB 27 PG 63 Lot 11 |
| Lodarek, Donald L. and Lauren | 3329 53rd St W, Lehigh Acres | Lehigh Acres Unit 7 Blk 60 PB 15 PG 60 Lot 8 |
| | 1847 Jovita Ave, Lehigh Acres | Greenbriar Unit 55 Blk 329 PB 27 PG 79 Lot 7 |
| Long, Andrew Collin | 2710 24th St W, Lehigh Acres | Lehigh Acres Unit 7 Blk 58 PB 15 PG 68 Lot 16 |
| Long, Donald and Nina H. | 1851 Ottoman Street, Lehigh Acres | Greenbriar Unit 21 Part N Blk 122 PB 27 PG 33 Lot 13 |
| Marek, Richard and Tari Lee | 1819 Tomaso Ave, Lehigh Acres | Greenbriar Unit 40 Blk 260 PB 27 PG 63 Lot 13 |
| McCann, Debra & Thomas | 2901 26th St SW, Lehigh Acres | Lehigh Acres Unit 3 Blk 33 PB 15 PG 93 Lot 10 |
| | 1831 Tomaso Ave, Lehigh Acres | Greenbriar Unit 40 Blk 260 PB 27 PG 63 Lot 19 |
| Messler, Eileen | 3418 24th St. SW, Lehigh Acres | Lehigh Acres Replat Sec 2 Blk 59 PB 26 PG 179 Lot 21 |
| Montgomery, Jeff and Elizabeth | 677 Woodcrest Drive, Lehigh Acres | Greenbriar Unit 41, Blk 261 PB 27 PG 64 Lot 3 |
| | Lot 35 Knowles Lane, North Port | LOT 35 BLK 976 22ND Add to Port Charlotte |
| Nord, Curt R. and Jeanette | 2306 Truman Ave, Alva | Lehigh Acres Unit 10 Blk 38 DB 259 PG 126 Lot 9 |
| | 4303 E 15th St, Lehigh Acres | Lehigh Acres Unit 10 Blk 45 DB 254 PG 85 Lot 12 E 1/2 |
| Rosenzweig, Stanley and Betty | 4212 16th St W, Lehigh Acres | Lehigh Acres Unit 1 Blk 2 PB 15 PG 95 Lot 18 |
| Sheehan, Alyce and Patrick | 1835 Tomaso Ave, Lehigh Acres | Greenbriar Unit 40 Blk 260 PB 27 PG 63 Lot 21 |
| | 680 Wentworth Ave, Lehigh Acres | Greenbriar UT 41 Blk 261 PB 27 PG 64 Lot 27 |
| Shifflett, Richard S. and Carol A. | 673 Woodcrest Drive, Lehigh Acres | Greenbnar Unit 41 Blk 261 PB 27 PG 64 Lot 5 |
| Silcox, Lawrence | 2517 Gascom St, North Port | LOT 6 BLK 1669 33RD Add to Port Charlotte |
| Torlucci, William and Kathleen | 729 Burns Ave S, Lehigh Acres | Lehigh Acres Unit 7 Blk 34 PB 18 PG 60 Lot 2 |
| | 679 Woodcrest Drive, Lehigh Acres | Greenbriar Unit 41 Blk 261 PB 27 PG 64 Lot 2 |
| Wolfe, James E. and Kimberly | 3807 4th St SW, Lehigh Acres | Lehigh Acres Unit 6 Blk 61 PB 15 PG 90 Lot 8 |
| Wright, Rob and Joan | 1846 Jovita Ave, Lehigh Acres | Greenbriar Unit 58 PT W Blk 344 PB 27 PG 82 Lot 2 |

