UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GLENN ACCIARD, ET AL.,

        Plaintiffs,

v.                                             Case No.  2:07-cv-476-UA-DNF

RUSSELL WHITNEY, ET AL.,

        Defendants.

_____/

**ORDER**

This cause comes before the Court on four motions: (1) Defendant First Community Bank of Southwest Florida's Motion to Dismiss (Doc. No. 196), which Plaintiffs oppose (Doc. No. 213); (2) Webster Bank's Motion to Dismiss (Doc. No. 205), which Plaintiffs oppose (Doc. No. 230); (3) Defendant Construction Loan Company's Motion to Dismiss (Doc. No. 204), which Plaintiffs oppose (Doc. No. 224), and to which a reply brief has been filed (Doc. No. 315); and (4) National Credit Union Administration Board's (hereinafter referred to as "Huron") Motion to Dismiss (Doc. No. 265), which Plaintiffs oppose (Doc. No. 338).  Accordingly, the Court will analyze each motion.

**I.  Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim

showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.  See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)(citation omitted).  As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1965 (citation omitted).  While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level."  Id. (citation omitted).  The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II.  Background

Plaintiffs, purchasers of property due to an allegedly fraudulent scheme, allege the following in their amended complaint (Doc. No. 190): Plaintiffs are students of Millionaire University ("MU"), a program consisting of real estate seminars.  Plaintiffs contend that a group of individuals and entities joined together to sell, develop, finance, market, and manage real estate to and for MU students.  Plaintiffs refer to this group as the Millionaire University Partners ("MU Partners").[1]

---

[1]The MU Partners are the following twenty-one defendants: Russell Whitney, John Kane, Michael Kane, Kane Properties, Inc., Whitney Education Group, Inc., Whitney Information Network, Inc., Wealth Intelligence Academy, Inc., Gulfstream Development Group, LLC ("Gulfstream Development"), Gulfstream Realty & Development, LLC ("Gulfstream Realty"), Gulfstream Investment Group, LLC, United Mortgage Corporation, Douglas Realty, Inc., Paradise Title Services, Inc., Brian Haag, Kevin Caraotta, David Wittig, Ashley Seibert, Real Pro, LLC, Hot Appraisals, LLC, Kevin Haag, and Douglas Haag.

Plaintiffs allege that the MU Partners enticed people to invest in real estate through real estate educational courses in which they, along with other entities, intentionally built a relationship of trust with the "students" to whom they then pitched their real estate investment "opportunities."  During the real estate courses, the students are "taught" how to identify good real estate investments, and then the students are presented with the MU Partners' investment "opportunity," which matches what the MU students were taught that they should buy.

The MU students are taught that to succeed in real estate, they must have a "Power Team," consisting of a lender, real estate broker, contractor, title company, and property manager.  The MU students are introduced to representatives of defendants Gulfstream Development (contractor), United Mortgage (lender) Douglas Realty, Inc. (real estate broker and property manager), and Paradise Title (title company), and these entities teach the students about their areas of expertise in the real estate business.

At the end of MU's Intensified Real Estate Training Course, representatives of the MU Partners tell the MU students about a "turnkey" investment program set up by the MU Partners exclusively for the MU students.  The representatives of the MU Partners tell the students that this program is so lucrative that it will pay back every dollar spent by the student for the intensified training course and give them capital to jumpstart their real estate investing careers. The representatives describe this "exclusive" turnkey investment ("MU Investment Program") as homes built by Gulfstream Development on "prime" and "premium" lots selected by Douglas Realty similar to the homes shown to the MU students in middle-class neighborhoods. Additionally, the representatives tell the MU students that this investment opportunity meets all of the conditions for making money in real estate with little risk and that the MU Partners are

making this exclusive investment opportunity available for a limited time, so the students needed to invest quickly.

The MU Investment Program consisted of a home built by Gulfstream Development, financed through United Mortgage, on a prime or premium lot located by Douglas Realty, titled through Paradise Title, sold to MU students at a price represented to be $50,000 to $70,000 below the "current appraised value" of the property and was managed and marketed for them by Douglas Realty afterwards.  Thus, the students were asked to rely on the expertise of the MU Partners to (1) select a prime lot, (2) obtain the best, most appropriate financing, (3) build a well-constructed home, and (4) market the property for sale and/or rent at or above the appraised value.  Additionally, the MU Partners told the students that they would not overbuild the MU Investment Program homes in a neighborhood so that the students would not have to compete among themselves to resell their investment property.

When a student agreed to purchase one of the MU Investment Program homes, the MU Partners sent the student a package of documents to sign in blank, which included contracts to buy a lot, to pay Gulfstream Development to build the home, and to hire Douglas Realty and/or Gulfstream Realty as the exclusive realtor and property manager for the property.  The MU Partners instructed the students to immediately sign and return the blank documents to them, after which the MU Partners filled in the lot address, price, and obligation to purchase without any condition for financing.

The MU Partners also directed the students to sign a mortgage brokerage contract with United Mortgage, which contained a fraudulent appraisal value for the property.  After this

contract was signed, United Mortgage, acting for itself and as agent for the defendant Lenders,[2] selected and arranged financing with one or more of the Lenders.  United Mortgage would represent to the students that the financing it obtained was the best financing that was available.

The fraudulent appraisal value was set by the MU Partners and required them to first determine how much money the MU Partners, CLC, Huron, and Greenbriar Real Estate Holdings, Inc. ("Greenbriar")[3] would make through the sale of the lot, construction of the home, and financing the purchase.  This calculation determined the amount of the note and mortgage for the one year construction loan, which represented the purchase price charged to the MU student.  After the MU Partners determined the purchase price, they arranged for an appraisal by one of the defendant Appraisers[4] that would value the property high enough for the construction loan amount to be 80% of the appraised value.  Each of the Lenders knowingly accepted and utilized the fraudulent appraisals when extending financing to the students.  The MU Partners' fraudulent appraisal was essential to the fraudulent scheme, because it facilitated the transaction: the defendant Lenders provided financing based on the fraudulent appraisals, which allowed the students to pay the inflated lot price, excessive construction price, and excessive closing fees to the MU Partners, CLC, Huron, and Greenbriar.

United Mortgage, CLC, and Huron would also direct the students to sign construction

---

[2]The defendant Lenders consist of First Community Bank of Southwest Florida ("First Community Bank"), Norlarco Credit Union ("Norlarco"), Webster Bank, NA ("Webster"), The Construction Loan Company, Inc. ("CLC"), and Huron River Area Credit Union ("Huron").

[3]Defendant Greenbriar is owned or controlled by the MU Partnership and was created for the purpose of acquiring properties for resale to MU students.

[4]The defendant Appraisers consisted of Real Pro, LLC, Hot Appraisals, LLC, Ashley Seibert, and David Wittig.

loan documents that represented that the home under construction would be the student's primary residence or second home, even though United Mortgage, CLC, and Huron knew that the home was being built for investment purposes.  United Mortgage, CLC, and Huron did this for several reasons, including (1) to obtain a lower interest rate (which reduced interest payments that Gulfstream Development agreed to pay), (2) to help ensure that the students would qualify for the loan, and (3) to lead purchasers of the mortgages and notes to believe that the purchase of the mortgages and notes was less risky because they were secured by residences rather than investment properties, which allowed United Mortgage, CLC, and Huron to sell the mortgages and notes and realize profits on the transactions.

The current appraised values of the properties were grossly and fraudulently overstated by the MU Partners.  The MU Partners, CLC, Huron, and Greenbriar did not have prime or premium lots available, nor did they obtain any.  Instead, the MU Partners purchased undesirable lots, in remote locations, with poor roads and without curbs, sidewalks, or street lighting, with some in high crime, highly vandalized areas, with only well water and septic tanks available, and then they marked up the lot prices by tens of thousands of dollars and resold them to the students for an undisclosed profit.  Additionally, the MU homes were overbuilt, which resulted, in some instances, with a single street block containing five or more of the same models for sale at the same time.  Also, participation in the MU Program was not limited to MU students, which created even more competition between the investors.

Thereafter, United Mortgage assigned notes and mortgages to defendant EMC Mortgage Corporation ("EMC") for a profit.  EMC took the assignment knowing, or it should have known, that the property values were grossly exaggerated in the fraudulent appraisals.

6

As a result, there is a glut of MU homes on the market, in undesirable locations, that are grossly overpriced and cannot be sold without causing a tremendous loss to the MU student investors.  Appraised values determined by independent appraisers are substantially below the defendant Appraisers' appraised values, and the students cannot sufficiently collateralize refinancing to pay off the construction loans.  The MU students have filed suit against the MU Partners, the Lenders, Greenbriar, and EMC based on this alleged fraudulent scheme.

### III.  First Community Bank's Motion to Dismiss

Plaintiffs assert four claims against First Community Bank: (1) constructive fraud (Count III), (2) violation of Mortgage Brokerage and Lending Laws (Count V), (3) violation of Florida's Unfair and Deceptive Trade Practices Act ("FDUTPA") (Count IX), and (4) fraud in the inducement (Count XII).  In response, First Community Bank filed the instant motion to dismiss.

In its motion to dismiss, First Community Bank argues that all four claims against it should be dismissed because: (1) Plaintiffs fail to state the fraud claims in Counts III and XII with particularity, and (2) Plaintiffs cannot assert a FDUTPA claim or violation of the mortgage lending laws claim against it.  As explained below, the Court rejects these arguments.

#### A.  Particularity

First Community Bank argues that Plaintiffs fail to state the fraud claims in Counts III and XII with particularity.  Specifically, First Community Bank argues that there are no allegations against it, nor are any false statements by it alleged.  The Court rejects these arguments.

There are allegations against First Community Bank in both Counts III and XII.  While Count III mainly identifies the MU Partners, Plaintiffs re-allege and incorporate certain

paragraphs into Count III, including all of the factual allegations set forth in paragraphs 1 through 84, which include allegations regarding First Community Bank.  Furthermore, Count XII contains specific references to First Community Bank.  (Doc. No. 190, ¶ 149, 152, 155-158).

Additionally, Plaintiffs have identified the false statements that were made–the fraudulent appraisal values.  Plaintiffs allege that United Mortgage, which is alleged to be an agent of First Community Bank, provided loan documents to Plaintiffs containing the fraudulent appraisals.  Plaintiffs also allege that the Lenders, which include First Community Bank, knowingly utilized the fraudulent appraisal and that the fraudulent appraisals and financing were key to the fraudulent scheme.  Accordingly, the Court finds that Plaintiffs meet the particularity requirements for pleading fraud in this case.

### B.  FDUTPA

In Count IX, Plaintiffs assert a FDUTPA claim against First Community Bank, alleging that it used deceptive practices.  First Community Bank argues that Plaintiffs' FDUTPA claim must be dismissed, because there are no allegations made against it and the Act does not apply to banks that are regulated by the state.  The Court rejects both arguments.

First Community Bank's argument is based, in part, on the fact that Plaintiffs state in Count IX that the MU Partners have violated FDUTPA by using deceptive practices to sell and finance the MU Properties.  First Community Bank argues that because it is not one of the MU Partners, there are no allegations against it.  This argument is without merit, since Count IX re-alleges and incorporates certain paragraphs into Count IX, including all of the factual allegations set forth in paragraphs 1 through 84, which include allegations regarding First Community Bank.

Additionally, First Community Bank's argument that FDUTPA does not apply to it fails

at this stage of the litigation, as this argument is contained in a motion to dismiss, and the Court is confined to the four corners of the complaint.  While First Community Bank correctly asserts that FDUTPA does not apply to banks regulated by the state, see Banks Trust Co. v. Basciano, 960 So. 2d 773, 778 (Fla. 5th DCA 2007), there is no allegation in the complaint that First Community Bank is regulated by the state.  As such, while First Community Bank  may be a state regulated bank to which FDUTPA does not apply, such an argument should be made in a motion for summary judgment along with evidence to support the assertion.  As such, this argument must be rejected at this time.

### C.  Mortgage Lending Laws

In Count V, Plaintiffs assert a claim for a violation of Florida's mortgage lending laws; specifically, Florida Statute § 494.0025(4).  Section 494.0025(4)(a) makes it unlawful for any person in any mortgage transaction, directly or indirectly, to knowingly or willingly employ any device, scheme, or artifice to defraud.

First Community Bank argues that it is exempt from this statute, because it is a state chartered bank.  Specifically, it points to Florida Statute § 494.006(1)(a), which provides that a state chartered bank is exempt from the requirements of § 494.006 through § 494.0077.  The flaw in First Community Bank's argument, however, is that § 494.0025(4) is not a requirement within the provisions from which it is exempt–sections 494.006 through 494.0077.  As such, its argument fails.

### IV.  Webster Bank's Motion to Dismiss

Plaintiffs assert five claims against Webster Bank ("Webster"): (1) constructive fraud (Count III), (2) violation of Mortgage Brokerage and Lending Laws (Count V), (3) violation of

Florida's Unfair and Deceptive Trade Practices Act ("FDUTPA") (Count IX), (4) fraud in the inducement (Count XII), and (5) violation of Florida's Consumer Collection Practices Act ("FCCPA").  In response, Webster filed the instant motion to dismiss.

Webster argues that the claims against it should be dismissed, because: (1) Plaintiffs have not alleged that Webster is a fiduciary; (2) Plaintiffs fail to adequately plead fraud; (3) Plaintiffs fail to adequately plead that United Mortgage was its agent; (4) Plaintiffs' FDUTPA claim fails as a matter of law; and (5) Plaintiffs fail to properly plead entitlement to rescission.[5]  As explained below, the Court rejects these arguments.

### A.  Allegations Regarding Fiduciary Relationship

Webster first argues that Plaintiffs' constructive fraud claims fails, because they did not allege a fiduciary relationship between Webster and themselves.  Plaintiffs respond that fiduciary relationships can be implied by law when confidence is reposed by one party and trust is accepted by another.  See Capital Bank v. MVB, Inc., 644 So. 2d 515, 518 (Fla. 3d DCA 1994)(citations omitted).  Additionally, Plaintiffs point out that fiduciary relationships between lenders and customers can arise in certain factual circumstances.  See id. at 518-19 (citations omitted).

The Court finds that Plaintiffs have adequately pled the existence of a fiduciary relationship, since they allege that MU students were encouraged to trust and rely on the expertise of their "Power Team," which included United Mortgage as an agent for Webster.

---

[5]Webster also argues that the complaint should be dismissed as an improper shotgun pleading.  The Court rejects this argument without further discussion. Additionally, Webster argues that the FCCPA claim fails, and while the reasons set forth in Webster's motion are not meritorious, the Court still dismisses the FCCPA claim for the reason set forth in this Court's analysis of CLC's motion to dismiss, which is set forth later in this order.

Plaintiffs did not independently choose Webster to finance their loans; rather, Webster was presented to them as a lender within the MU Investment Program.

Furthermore, the Court notes that there can be a duty of disclosure of information when a bank has actual notice of fraud being perpetrated on its customer, and yet the bank enters into the transaction in furtherance of the fraud.  See Barnett Bank of West Florida v. Hooper, 498 So. 2d 923, 925 (Fla. 1987).  Plaintiffs have alleged that Webster knowingly accepted and utilized the fraudulent appraisals when extending financing to them, which furthered the alleged fraudulent scheme.  Accordingly, the Court denies the motion to dismiss on this ground.

### B.  Pleading Fraud with Particularity

Next, Webster argues that Plaintiffs failed to plead their fraud claims with particularity.  The Court has already addressed and rejected this argument when analyzing First Community Bank's motion to dismiss.  For the same reasons, the Court denies Webster's motion to dismiss on this ground.

### C.  Allegations Regarding Agency

Next, Webster argues that Plaintiffs fail to adequately allege that United Mortgage was its agent.  Upon review of the allegations in the complaint, the Court rejects this argument.  (Doc. No. 190, ¶ 48, 64, 77)

### D.  FDUTPA Claim

Next, Webster argues that the FDUTPA claim must be dismissed, because FDUTPA does not apply to Webster, and even if it did, Plaintiffs failed to adequately plead a claim.  The Court rejects both arguments.

Webster bases its first argument on Florida Statute § 501.212(4), which exempts banks

regulated by federal law from FDUTPA.  However, this argument fails at this stage of the

litigation, as this argument is contained in a motion to dismiss, and the Court is confined to the

four corners of the complaint.  Instead, such an argument is more appropriate for a motion for

summary judgment, in which Webster can submit evidence to support the assertion.

Webster also argues that Plaintiffs fail to state a FDUTPA claim, because they have not

alleged causation and damages.  This argument has no merit, as Plaintiffs have alleged that the

fraudulent scheme caused them to buy grossly overpriced properties.

**E.  Rescission**

Next, Webster argues that Plaintiffs fail to properly plead entitlement to the remedy of

rescission, because they fail to allege that they do not have an adequate remedy at law.  The

Court rejects this argument, because rescission can be an appropriate remedy for fraud.  See

Arad v. Caduceus Self Ins. Fund, Inc., 585 So. 2d 1000, 1004 (Fla. 4th DCA 1991); Ganaway v.

Henderson, 103 So. 2d 693, 695 (Fla. 1st DCA 1958).

**V.  Construction Loan Company**

Plaintiffs assert nine claims against Defendant Construction Loan Company ("CLC"): (1)

breach of fiduciary duty (Count II), (2) constructive fraud (Count IV), (3) violation of Mortgage

Brokerage and Lending Laws (Count VI), (4) violation of FDUTPA (Count X), (5) fraud in the

inducement (Count XIII), (6) Federal RICO (Count XVIII), (7) Federal RICO conspiracy (Count

XIX), (8) violation of FCCPA (Count XX), and (9) defamation (Count (XXI).  In response, CLC

filed the instant motion to dismiss all of the claims asserted against.[6]  Accordingly, the Court will

---

[6]To the extent that CLC argues that the claims should be dismissed because the complaint
is a shotgun pleading, the Court rejects that argument without further discussion.

analyze each claim.

### A.  Breach of Fiduciary Duty

CLC argues that the breach of fiduciary duty claim should be dismissed because Plaintiffs do not adequately allege a fiduciary duty between them and CLC, and the actions of other defendants cannot be imputed to CLC through agency principles to support this claim. These arguments were made by Webster and rejected by the Court.  Accordingly, the Court denies the motion as to this claim for the same reasons as set forth in this Court's analysis of Webster's motion to dismiss.[7]

### B.  Constructive Fraud, Fraud in the Inducement, and Violation of Mortgage Lending Laws

Next, CLC argues that the constructive fraud claim, fraud in the inducement claim, and violation of mortgage lending laws claims should be dismissed because they lack the required particularity and lump all defendants together.  As previously stated in this order, the Court has already found that the claims have been stated with sufficient particularity.  Furthermore, the Court finds that Plaintiffs did not lump all defendants together.  Rather, some defendants had the same role in the alleged fraudulent scheme, and there are certain allegations as to groups of defendants throughout the complaint.  However, this is not a situation where plaintiffs are suing several defendants that had different parts in a scheme and asserted every allegation against all defendants generally.  Accordingly, the Court denies CLC's motion to dismiss this claim.

### C.  FDUTPA

Next, CLC argues that the FDUTPA claim should be dismissed, because Plaintiffs did

---

[7]To the extent that CLC makes agency arguments regarding other claims asserted against it, they are rejected for the same reason.

not allege a deceptive act done by CLC, and they fail to allege causation and damages.  The
Court rejects these arguments.

Plaintiffs have adequately alleged CLC's deceptive acts.  For example, Plaintiffs allege
that CLC coerced or attempted to coerce Plaintiffs to close on permanent financing, while falsely
representing the values of the properties.  (Doc. No. 190, ¶ 82).  Furthermore, Plaintiffs have
adequately alleged causation and damages–that the deceptive practices led to them purchasing
property that was not worth what it was represented to be.  Therefore, the Court denies CLC's
motion to dismiss this claim.

### D.  RICO Claims

Next, CLC argues that the RICO claims should be dismissed, because Plaintiffs fail to
adequately allege an enterprise or predicate acts.  Further, they argue that Plaintiffs cannot assert
a RICO conspiracy claim if their RICO claim fails.  The Court rejects these arguments.

The Court disagrees that Plaintiffs failed to adequately allege CLC's involvement in an
enterprise.  CLC's argument is based on Reves v. Ernst & Young, 507 U.S. 170 (1993), in which
the Supreme Court analyzed a provision of the Federal RICO statute, 18 U.S.C. § 1962(c).  That
statute provides that it is "unlawful for any person employed by or associated with any enterprise
. . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs
through a pattern of racketeering activity."  The Supreme Court interpreted § 1962(c) to require a
showing that the defendant had "*some* part in directing the enterprise's affairs."  Id. at 179.
Thus, the Court concluded that a defendant cannot be liable under § 1962(c) unless he "has
participated in the operation or management of the enterprise itself."  Id. at 183.

Plaintiffs have sufficiently alleged that CLC has participated in the operation or

management of the MU Partnership, which Plaintiffs allege to be a RICO enterprise. Specifically, Plaintiffs allege that CLC directed the MU students' financing by directing and coercing the students to sign loan documents that CLC knew contained false information in order to further the fraudulent scheme.  Thereafter, CLC sold the loans and realized a profit on those transactions.  CLC was a necessary party to the fraudulent sales scheme, and Plaintiffs have alleged that CLC knowingly participated in the scheme.

Likewise, the Court rejects CLC's argument that Plaintiffs have not adequately pled the predicate acts of mail, wire, and television fraud for the RICO claim.  Specifically, they argue that Plaintiffs have not adequately alleged the elements of reliance and proximate cause.  The Court rejects this argument.

For example, Plaintiffs allege that as part of the scheme, infomercials were regularly televised in order to lure the students to MU and then into the MU Investment Program. Plaintiffs allege that they relied on these infomercials in deciding to attend MU, which led to Plaintiffs trusting the MU Partners and investing in the fraudulent MU Investment Program.

Furthermore, because the Court has found that Plaintiffs have sufficiently alleged their RICO claim, the Court rejects CLC's argument that the RICO conspiracy claim necessarily fails. Accordingly, the Court denies CLC's motion to dismiss the RICO claims.

### E.  FCCPA

Next, CLC argues that the FCCPA claim should be dismissed because the debts at issue (the mortgages) were not consumer debts, and as such, the FCCPA does not apply.  The Court agrees.

Plaintiffs allege that certain defendants violated Florida Statute § 559.72 of the FCCPA.

The statute begins with the phrase: "In collecting consumer debts, no person shall . . .."  Thus, the statute at issue only applies to consumer debts, which the FCCPA defines, in pertinent part, as: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction *are primarily for personal, family, or household purposes*."  Fla. Stat. § 559.55(1)(emphasis added).  Plaintiffs clearly allege that the mortgages are on properties that are being held for investment purposes.  (Doc. No. 190, ¶ 78).  Therefore, Plaintiffs cannot assert a claim for a violation of the FCCPA under the facts of this case, and as such, the Court dismisses this claim against all of the defendants that it is asserted against.[8]

### F.  Defamation

Next, CLC argues that the defamation claim should be dismissed because it is preempted by the Fair Credit Reporting Act ("FCRA").  The Court rejects this argument.

Plaintiffs' defamation claim is based on allegations that CLC published false statements to third parties, including credit reporting agencies; that CLC knew the statements were false or were made with reckless disregard for the truth; and that CLC made the statements maliciously and with the intent to injure Plaintiffs.  CLC argues that this claim is preempted by 15 U.S.C. § 1681t(b)(1)(F), which states: "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies."

---

[8]The FCCPA claim is asserted against Gulfstream Development, Huron, EMC, Webster, and CLC.

Plaintiffs respond that the viability of their claim depends not on § 1681t, but rather, it depends on 15 U.S.C. § 1681h(e).  Section 1681h(e) provides, in pertinent part, that "no consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer."

Therefore, the issue before the Court is the relationship between the two preemption statutes, and thus, which statute controls the preemption issue in this case.  The Eleventh Circuit has not addressed the relationship between these two statutes,[9] and courts have come to differing conclusions.  However, this Court is persuaded by those courts that construe the relationship between the two statutes as follows: Section 1681(h)(e) applies to torts (such as defamation), while section 1681t(b)(1)(F) only applies to state statutory regulation of credit reporting practices and procedures.  See Jordan v. Trans Union LLC, 377 F. Supp.2d 1307, 1309 (N.D. Ga. 2005); Neal v. Equifax Information Services LLC, 2005 WL 5249668, at *3 (N.D. Ga. Mar. 4, 2005); Johnson v. Citimortgage, Inc., 351 F. Supp.2d 1368, 1376 (N.D. Ga. 2004); McCloud v. Homeside Lending, 309 F. Supp.2d 1335, 1341 (N.D. Ala. 2004).

Since Plaintiffs are alleging a defamation claim, which is controlled by § 1681(h)(e), and they allege that CLC reported false information with malice and intent to injure Plaintiffs, the Court finds that the claim is not preempted.  Accordingly, the Court denies CLC's motion to dismiss this claim.

---

[9]In Lofton-Taylor v. Verizon Wireless, 262 Fed. Appx. 999, 1002-03 (11th Cir. 2008), the court specifically declined to consider this issue.

**VI.  Huron**

Plaintiffs assert ten claims against Huron: (1) breach of fiduciary duty (Count II), (2) constructive fraud (Counts III and IV), (3) violation of Mortgage Brokerage and Lending Laws (Count VI), (4) violation of FDUTPA (Count X), (5) fraud in the inducement (Count XIII), (6) Federal RICO (Count XVIII), (7) Federal RICO conspiracy (Count XIX), (8) violation of FCCPA (Count XX), and (9) defamation (Count (XXI).  In response, Huron filed the instant motion to dismiss all of the claims asserted against it.[10]  Accordingly, the Court will address each argument.

**A.  Compliance with Rule 8(a)**

Huron argues that the claims against it should be dismissed, because the allegations do not satisfy the notice pleading requirement of Rule 8(a) and improperly lump all of the Lender defendants together.  The Court rejects this argument and finds that Plaintiffs have complied with Rule 8(a).  Furthermore, the Court finds that Plaintiffs did not lump all defendants together.  Rather, some defendants had the same role in the alleged fraudulent scheme, and there are certain allegations as to groups of defendants throughout the complaint.  However, this is not a situation where plaintiffs are suing several defendants that had different parts in a scheme and asserted every allegation against all defendants generally.  Accordingly, the Court denies the motion to dismiss on this issue.

---

[10]To the extent that Huron argues that the claims should be dismissed because the complaint is a shotgun pleading, the Court rejects that argument without further discussion.

### B.  Breach of Fiduciary Duty

Next, Huron argues that the breach of fiduciary duty claim should be dismissed because Plaintiffs do not adequately allege a fiduciary relationship between them and Huron, and the actions of other defendants cannot be imputed to Huron through agency principles to support this claim.  These arguments were made by Webster and CLC, and they were rejected by the Court. Accordingly, the Court denies the motion as to this claim for the same reasons as set forth in this Court's analysis of Webster's motion to dismiss.[11]

### C.  Constructive Fraud

Plaintiffs assert two constructive fraud claims against Huron–Counts III and IV.  Huron argues that the counts are duplicative, and Plaintiff concedes that Count III is duplicative. (Doc. No. 338, p. 12, n.10).  Therefore, the Court dismisses Count III as to Huron.

Huron further argues that the constructive fraud claim in Count IV should be dismissed for the same reasons raised by other defendants and rejected by this Court: (1) there is no fiduciary relationship between Huron and Plaintiffs; (2) Plaintiffs improperly lump the defendants together; and (3) the allegations fail to meet the particularity requirements of Rule 9(b).  These arguments need no further analysis, and as such, the Court denies the motion on this issue.

### D.  Mortgage Lending Laws

Plaintiffs assert a claim for a violation of Florida's mortgage lending laws against Huron;

---

[11]To the extent that Huron makes agency arguments regarding other claims asserted against it, they are rejected for the same reason.

specifically, a violation of Florida Statute § 494.0025(4).  Section 494.0025(4)(a) makes it

unlawful for any person in any mortgage transaction, directly or indirectly, to knowingly or

willingly employ any device, scheme, or artifice to defraud.

Huron argues that this claim must be dismissed, because Plaintiffs have not adequately

alleged that Huron is a mortgage lender.  Plaintiffs respond that the statute applies to "any

person," not just mortgage lenders, and as such, their allegations are sufficient.  The Court agrees

and denies the motion on this issue.

### E.  FDUTPA

Next, Huron argues that Plaintiffs' FDUTPA claim should be dismissed, because federal

credit unions, like itself, should be excepted from FDUTPA.  The Court need not reach the

merits of this argument, because Plaintiffs do not allege that Huron is a federal credit union;

instead, they allege that Huron is a state-charted bank.  (Doc. No. 190, ¶ 61).  Thus, Huron's

legal argument involves a factual dispute that is not appropriate for a motion to dismiss.  As

such, the Court denies the motion on this issue.

### F.  Fraud in the Inducement

Next, Huron argues that the fraud in the inducement claim should be dismissed because it

lacks the required particularity.  As previously stated in this order, the Court has found that this

claim has been stated with sufficient particularity.  Therefore, the Court denies the motion on

this issue.

### G.  RICO Claims

Next, Huron argues that the RICO claims should be dismissed for the same reasons as set

forth by CLC, which were rejected by this Court.  Plaintiffs have sufficiently alleged that Huron

has participated in the operation or management of the MU Partnership, which Plaintiffs allege

to be a RICO enterprise.  Specifically, Plaintiffs allege that Huron coerced or attempted to coerce

Plaintiffs to close on permanent financing based on fraudulent appraisal values in order to further

the fraudulent scheme.  Huron was a necessary party to the fraudulent sales scheme, and

Plaintiffs have alleged that Huron knowingly participated in the scheme.  Thus, for the same

reasons that the Court rejected CLC's arguments for dismissal of the RICO claims, the Court

rejects Huron's arguments and denies the motion to dismiss on this issue.

### H.  Defamation

Next, Huron argues that the defamation claim should be dismissed because the

allegations does not comply with the notice pleading requirement of Rule 8(a).  Again, this Court

rejects this argument and denies the motion on this issue.

### I.  FCCPA

Huron did not specifically move to dismiss the FCCPA claim asserted against it, but the

Court has already found that this is not a viable claim, because the debts at issue are not

consumer debts.  As such, the Court dismisses the FCCPA claim asserted against Huron.

### VII.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     First Community Bank of Southwest Florida's Motion to Dismiss (Doc. No. 196)

is **DENIED**.

(2)     Webster Bank's Motion to Dismiss (Doc. No. 205) is **GRANTED IN PART**

**AND DENIED IN PART**: The motion is **GRANTED** to the extent that the Court dismisses Plaintiffs' FCCPA claim (Count XX); otherwise, the motion is **DENIED**.

(3)     (3) Defendant Construction Loan Company's Motion to Dismiss (Doc. No. 204) is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** to the extent that the Court dismisses Plaintiffs' FCCPA claim (Count XX); otherwise, the motion is **DENIED**.

(4)     Defendant National Credit Union Administration Board's Motion to Dismiss (Doc. No. 265) is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** to the extent that the Court dismisses Plaintiffs' constructive fraud claim in Count III as duplicative and the FCCPA claim in Count XX; otherwise, the motion is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 4th day of December, 2008.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

22