UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GLENN ACCIARD, ET AL.,

        Plaintiffs,

v.                                         Case No.  2:07-cv-476-UA-DNF

RUSSELL WHITNEY, ET AL.,

        Defendants.
_____/

## ORDER

This cause comes before the Court on Defendants CCFL1234 f/k/a Gulfstream Realty &

Development, LLC ("Gulfstream Realty"), Douglas Realty, Inc., Kevin Haag, and Douglas

Haag's Motion to Dismiss (Doc. No. 197), which is joined by Defendants Real Pro, LLC and

David Wittig (Doc. No. 252).  Additionally, Defendants Brian Haag, Gulfstream Development

Group, LLC ("Gulfstream Development"), Gulfstream Investment Group, LLC ("Gulfstream

Investment"), and Paradise Title Services ("Paradise") have filed a motion to dismiss.  (Doc. No.

202).  Plaintiffs oppose these motions.  (Doc. No. 214, 264, 216).

## I.  Standard of Review

In deciding a motion to dismiss, the district court is required to view the complaint in the

light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959,

962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The

Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon

which he bases his claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim

showing that the pleader is entitled to relief in order to give the defendant fair notice of what the

claim is and the grounds upon which it rests.  See Bell Atlantic Corp. v. Twombly, 127 S. Ct.

1955, 1964 (2007)(citation omitted).  As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1965 (citation omitted).  While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level."  Id. (citation omitted).  The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II.  Background

Plaintiffs, purchasers of property due to an allegedly fraudulent scheme, allege the following in their amended complaint (Doc. No. 190): Plaintiffs are students of Millionaire University ("MU"), a program consisting of real estate seminars.  Plaintiffs contend that a group of individuals and entities joined together to sell, develop, finance, market, and manage real estate to and for MU students.  Plaintiffs refer to this group as the Millionaire University Partners ("MU Partners").[1]

Plaintiffs allege that the MU Partners enticed people to invest in real estate through real estate educational courses in which they, along with other entities, intentionally built a

---

[1]The MU Partners are the following twenty-one defendants: Russell Whitney, John Kane, Michael Kane, Kane Properties, Inc., Whitney Education Group, Inc., Whitney Information Network, Inc., Wealth Intelligence Academy, Inc., Gulfstream Development Group, LLC ("Gulfstream Development"), Gulfstream Realty & Development, LLC ("Gulfstream Realty"), Gulfstream Investment Group, LLC, United Mortgage Corporation, Douglas Realty, Inc., Paradise Title Services, Inc., Brian Haag, Kevin Caraotta, David Wittig, Ashley Seibert, Real Pro, LLC, Hot Appraisals, LLC, Kevin Haag, and Douglas Haag.

relationship of trust with the "students" to whom they then pitched their real estate investment "opportunities."  During the real estate courses, the students are "taught" how to identify good real estate investments, and then the students are presented with the MU Partners' investment "opportunity," which matches what the MU students were taught that they should buy.

The MU students are taught that to succeed in real estate, they must have a "Power Team," consisting of a lender, real estate broker, contractor, title company, and property manager.  The MU students are introduced to representatives of defendants Gulfstream Development (contractor), United Mortgage (lender) Douglas Realty, Inc. (real estate broker and property manager), and Paradise Title (title company), and these entities teach the students about their areas of expertise in the real estate business.

At the end of MU's Intensified Real Estate Training Course, representatives of the MU Partners tell the MU students about a "turnkey" investment program set up by the MU Partners exclusively for the MU students.  The representatives of the MU Partners tell the students that this program is so lucrative that it will pay back every dollar spent by the student for the intensified training course and give them capital to jumpstart their real estate investing careers. The representatives describe this "exclusive" turnkey investment ("MU Investment Program") as homes built by Gulfstream Development on "prime" and "premium" lots selected by Douglas Realty similar to the homes shown to the MU students in middle-class neighborhoods. Additionally, the representatives tell the MU students that this investment opportunity meets all of the conditions for making money in real estate with little risk and that the MU Partners are making this exclusive investment opportunity available for a limited time, so the students needed to invest quickly.

The MU Investment Program consisted of a home built by Gulfstream Development, financed through United Mortgage, on a prime or premium lot located by Douglas Realty, titled through Paradise Title, sold to MU students at a price represented to be $50,000 to $70,000 below the "current appraised value" of the property and was managed and marketed for them by Douglas Realty afterwards. Thus, the students were asked to rely on the expertise of the MU Partners to (1) select a prime lot, (2) obtain the best, most appropriate financing, (3) build a well-constructed home, and (4) market the property for sale and/or rent at or above the appraised value. Additionally, the MU Partners told the students that they would not overbuild the MU Investment Program homes in a neighborhood so that the students would not have to compete among themselves to resell their investment property.

When a student agreed to purchase one of the MU Investment Program homes, the MU Partners sent the student a package of documents to sign in blank, which included contracts to buy a lot, to pay Gulfstream Development to build the home, and to hire Douglas Realty and/or Gulfstream Realty as the exclusive realtor and property manager for the property. The MU Partners instructed the students to immediately sign and return the blank documents to them, after which the MU Partners filled in the lot address, price, and obligation to purchase without any condition for financing.

The MU Partners also directed the students to sign a mortgage brokerage contract with United Mortgage, which contained a fraudulent appraisal value for the property. After this contract was signed, United Mortgage, acting for itself and as agent for the defendant Lenders,[2]

---

[2]The defendant Lenders consist of First Community Bank of Southwest Florida ("First Community Bank"), Norlarco Credit Union ("Norlarco"), Webster Bank, NA ("Webster"), The Construction Loan Company, Inc. ("CLC"), and Huron River Area Credit Union ("Huron").

selected and arranged financing with one or more of the Lenders.  United Mortgage would represent to the students that the financing it obtained was the best financing that was available.

The fraudulent appraisal value was set by the MU Partners and required them to first determine how much money the MU Partners, CLC, Huron, and Greenbriar Real Estate Holdings, Inc. ("Greenbriar")[3] would make through the sale of the lot, construction of the home, and financing the purchase.  This calculation determined the amount of the note and mortgage for the one year construction loan, which represented the purchase price charged to the MU student.  After the MU Partners determined the purchase price, they arranged for an appraisal by one of the defendant Appraisers[4] that would value the property high enough for the construction loan amount to be 80% of the appraised value.  Each of the Lenders knowingly accepted and utilized the fraudulent appraisals when extending financing to the students.  The MU Partners' fraudulent appraisal was essential to the fraudulent scheme, because it facilitated the transaction: the defendant Lenders provided financing based on the fraudulent appraisals, which allowed the students to pay the inflated lot price, excessive construction price, and excessive closing fees to the MU Partners, CLC, Huron, and Greenbriar.

United Mortgage, CLC, and Huron would also direct the students to sign construction loan documents that represented that the home under construction would be the student's primary residence or second home, even though United Mortgage, CLC, and Huron knew that the home was being built for investment purposes.  United Mortgage, CLC, and Huron did this

---

[3]Defendant Greenbriar is owned or controlled by the MU Partnership and was created for the purpose of acquiring properties for resale to MU students.

[4]The defendant Appraisers consisted of Real Pro, LLC, Hot Appraisals, LLC, Ashley Seibert, and David Wittig.

for several reasons, including (1) to obtain a lower interest rate (which reduced interest payments that Gulfstream Development agreed to pay), (2) to help ensure that the students would qualify for the loan, and (3) to lead purchasers of the mortgages and notes to believe that the purchase of the mortgages and notes was less risky because they were secured by residences rather than investment properties, which allowed United Mortgage, CLC, and Huron to sell the mortgages and notes and realize profits on the transactions.

The current appraised values of the properties were grossly and fraudulently overstated by the MU Partners. The MU Partners, CLC, Huron, and Greenbriar did not have prime or premium lots available, nor did they obtain any. Instead, the MU Partners purchased undesirable lots, in remote locations, with poor roads and without curbs, sidewalks, or street lighting, with some in high crime, highly vandalized areas, with only well water and septic tanks available, and then they marked up the lot prices by tens of thousands of dollars and resold them to the students for an undisclosed profit. Additionally, the MU homes were overbuilt, which resulted, in some instances, with a single street block containing five or more of the same models for sale at the same time. Also, participation in the MU Program was not limited to MU students, which created even more competition between the investors.

Thereafter, United Mortgage assigned notes and mortgages to defendant EMC Mortgage Corporation ("EMC") for a profit. EMC took the assignment knowing, or it should have known, that the property values were grossly exaggerated in the fraudulent appraisals.

As a result, there is a glut of MU homes on the market, in undesirable locations, that are grossly overpriced and cannot be sold without causing a tremendous loss to the MU student investors. Appraised values determined by independent appraisers are substantially below the

6

defendant Appraisers' appraised values, and the students cannot sufficiently collateralize

refinancing to pay off the construction loans.  The MU students have filed suit against the MU

Partners, the Lenders, Greenbriar, and EMC based on this alleged fraudulent scheme.

### III.  Motions to Dismiss

Defendants Brian Haag, Gulfstream Development Group, Gulfstream Investment Group,

Paradise Title Service, Gulfstream Realty, Douglas Realty, Kevin Haag, Douglas Haag, Real

Pro, and David Wittig (all members of the MU Partnership and referred to as "Defendants"

throughout this Order), have the following eight claims asserted against them: (1) breach of

fiduciary duty (Count I), (2) constructive fraud (Count III), (3) violation of the Florida Unfair

and Deceptive Trade Practices Act ("FDUTPA") (Count IX), (4) fraudulent inducement (Count

XII), (5) civil conspiracy (Count XVI), (6) Florida RICO conspiracy (Count XVII), (7) Federal

RICO (Count XVIII), and (8) Federal RICO conspiracy (Count XIX).[5]  Additionally, Plaintiffs

assert two more claims against Gulfstream Development: (1) Fraudulent Lien (Count XV), and

(2) a violation of the Florida Consumer Collection Practices Act ("FCCPA") (Count XX).

Defendants move to dismiss all of the claims asserted against them.

Defendants make several arguments in support of their motions to dismiss: (1) the

complaint fails to satisfy the notice pleading requirements of Federal Rule of Civil Procedure

8(a); (2) Plaintiffs fail to plead their fraud, RICO, and FDUTPA claims with sufficient

particularity; (3) the claims consist of a shot-gun pleading; (4) Plaintiffs fail to adequately plead

---

[5]Plaintiffs also asserted a claim for violation of the Florida Uniform Land Sales Practices
Law (Count VII), but that claim is no longer viable and was dismissed.  (Doc. No. 349).

their RICO claims; and (5) Plaintiffs fail to state a fraudulent lien claim.[6]   Accordingly, the Court

will address each argument.

### A.  Sufficiency of the Allegations

Defendants argue that the complaint is an improper shotgun pleading, that Plaintiffs fail

to meet the pleading requirements of Rule 8(a), and that Plaintiffs fail to meet the particularity

requirements for certain claims.  These arguments have no merit.  A review of the complaint

reveals that it is not a shotgun pleading and that it complies with the notice requirements of Rule

8(a) and the particularity requirements of Rule 9(b).  Plaintiffs have alleged a complex

fraudulent scheme and have clearly alleged these defendants' participation in that scheme.

Accordingly, the motion to dismiss is denied on this ground.

### B.  RICO Claims

Next, Defendants argue that Plaintiffs fail to adequately plead their RICO claims (Florida

RICO conspiracy, Federal RICO, and Federal RICO conspiracy).  Specifically, Defendants argue

that: (1) the Federal RICO claim must be dismissed for failure to adequately allege their

involvement in an enterprise and for failing to adequately allege the predicate acts; and (2) if the

Federal RICO claim fails, then Plaintiffs cannot assert a Federal RICO conspiracy or a Florida

RICO conspiracy claim.  As explained below, the Court rejects these arguments.

### 1.  Involvement in the Enterprise

The Court disagrees that Plaintiffs failed to adequately allege Defendants' involvement in

---

[6]Gulfstream Development also argues that the FCCPA claim fails, and while the reasons
set forth in Gulfstream Development's motion are not meritorious, the Court still dismisses the
FCCPA claim because the debts at issue were not consumer debts (as explained in the Court's
analysis of CLC's motion to dismiss).

an enterprise.  Defendants' argument is based on <u>Reves v. Ernst & Young</u>, 507 U.S. 170 (1993),

in which the Supreme Court analyzed a provision of the Federal RICO statute, 18 U.S.C.

§ 1962(c).  That statute provides that it is "unlawful for any person employed by or associated

with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such

enterprise's affairs through a pattern of racketeering activity."  The Supreme Court interpreted §

1962(c) to require a showing that the defendant had "*some* part in directing the enterprise's

affairs."  <u>Id.</u> at 179.  Thus, the Court concluded that a defendant cannot be liable under § 1962(c)

unless he "has participated in the operation or management of the enterprise itself."  <u>Id.</u> at 183.

Plaintiffs have sufficiently alleged that these defendants have participated in the

operation or management of the MU Partnership, which Plaintiffs allege to be a RICO enterprise.

Specifically, Plaintiffs allege that (1) Douglas Realty acted as part of the Power Team, it selected

the lots the MU students purchased, and its president is Kevin Haag and vice president is

Douglas Haag; (2) both Kevin and Douglas Haag are directors of Douglas Realty and are part of

the Power Team; (3) Kevin Haag was the managing member of Gulfstream Investment, and he

told the students about the MU Investment Program and convinced them to invest; (4) Wittig and

Real Pro created the inflated, fraudulent appraisals; (5) Gulfstream Realty, whose managing

member is Kevin Haag, and Douglas Realty were supposed to be marketing the properties for the

students; (6) to further induce the students, Gulfstream Realty was supposed to lease the

properties for the students (should they choose to hold them rather than sell them) for lease rates

that would pay all but $500 per month of the cost of the monthly mortgage, taxes, and insurance;

(7) Paradise was part of the Power Team and it acted as the title company for the closings on the

MU investment properties; (8) Brian Haag was part of the Power Team and was a managing

member of Gulfstream Development; (9) Gulfstream Development was part of the Power Team

and was the contractor for the MU investment properties; and (10) Gulfstream Investment was

one of the MU Partners and profited from the fraudulent scheme.  All of these defendants were

necessary in order for the MU Partnership (of which they were members) to conduct the

fraudulent sales scheme, and Plaintiffs have alleged that they all knowingly participated in the

scheme.

### 2.  Predicate Acts

Defendants also argue that Plaintiffs fail to adequately allege the predicate acts of mail,

wire, and television fraud for the RICO claim.  Specifically, they argue that Plaintiffs have not

adequate alleged the elements of reliance and proximate cause.  The Court rejects this argument.

For example, Plaintiffs allege that Defendants regularly televised their infomercials,

which lured the students to MU and then into the MU Investment Program.  Plaintiffs allege that

they relied on these infomercials in deciding to attend MU, which led to Plaintiffs trusting the

MU Partners and investing in the fraudulent MU Investment Program.

### 3.  Related RICO Claims

Defendants argue that since the substantive RICO claim fails, the related Federal and

Florida RICO conspiracy claims also fail.  The Court rejects this argument, since the Court has

found that Plaintiffs adequately alleged the substantive RICO claim.

### C.  Fraudulent Lien

In Count XV of the complaint, Plaintiffs allege that Gulfstream Development has filed

liens on certain MU investment properties and has not released those liens, despite the fact that

Plaintiffs do not owe any money to Gulfstream Development.  Gulfstream Development argues

that Plaintiffs fail to state claim for a fraudulent lien.

A construction lien is a fraudulent lien if the lienor has willfully exaggerated the amount for which such lien is claimed.  See Fla. Stat. § 713.21(2)(a).  Plaintiffs allege that Gulfstream Development has filed liens on properties despite the fact that Plaintiffs do not owe any money to Gulfstream Development.  These allegations are sufficient to support Plaintiffs' claim that Gulfstream Development willfully exaggerated the amount of the lien claimed, since Plaintiffs allege that no money is owed.  Therefore, the Court denies the motion to dismiss on this issue.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     Defendants CCFL1234 f/k/a Gulfstream Realty & Development, LLC, Douglas Realty, Inc., Kevin Haag, and Douglas Haag's Motion to Dismiss (Doc. No. 197) is **DENIED**.

(2)     Defendants Real Pro, LLC and David Wittig's Motion to Dismiss (Doc. No. 252) is **DENIED**.

(3)     Defendants Brian Haag, Gulfstream Development, Gulfstream Investment, and Paradise's Motion to Dismiss (Doc. No. 202)  is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** to the extent that the Court dismisses Plaintiffs' FCCPA claim (Count XX); otherwise, the motion is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 4th day of December, 2008.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record