UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GLENN ACCIARD, ET AL.,

      Plaintiffs,

v.                                           Case No.  2:07-cv-476-UA-DNF

RUSSELL WHITNEY, ET AL.,

      Defendants.

_____/

## **ORDER**

        This cause comes before the Court on two motions: (1) Defendants Whitney Education

Group, Inc. ("WEG"), Whitney Information Network, Inc. ("WIN"), Russell Whitney, and John

Kane's Motion to Dismiss (Doc. No. 199), which Plaintiffs oppose (Doc. No. 231); and (2)

Defendant Wealth Intelligence Academy, Inc.'s ("WIA") Motion to Dismiss (Doc. No. 328),

which Plaintiffs oppose (Doc. No. 348).  These motions contain essentially the same arguments,

and as such, they will be considered together.

### **I.  Standard of Review**

        In deciding a motion to dismiss, the district court is required to view the complaint in the

light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959,

962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The

Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon

which he bases his claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim

showing that the pleader is entitled to relief in order to give the defendant fair notice of what the

claim is and the grounds upon which it rests.  See Bell Atlantic Corp. v. Twombly, 127 S. Ct.

1955, 1964 (2007)(citation omitted).  As such, a plaintiff is required to allege "more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.

at 1965 (citation omitted).  While the Court must assume that all of the allegations in the

complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right

to relief above the speculative level."  Id. (citation omitted).  The standard on a 12(b)(6) motion

is not whether the plaintiff will ultimately prevail in his or her theories, but whether the

allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the

allegations.  See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir.

1986).

## II.  Background

      Plaintiffs, purchasers of property due to an allegedly fraudulent scheme, allege the

following in their amended complaint (Doc. No. 190): Plaintiffs are students of Millionaire

University ("MU"), a program consisting of real estate seminars.  Plaintiffs contend that a group

of individuals and entities joined together to sell, develop, finance, market, and manage real

estate to and for MU students.  Plaintiffs refer to this group as the Millionaire University

Partners ("MU Partners").[1]

      Plaintiffs allege that the MU Partners enticed people to invest in real estate through real

estate educational courses in which they, along with other entities, intentionally built a

relationship of trust with the "students" to whom they then pitched their real estate investment

---

[1]The MU Partners are the following twenty-one defendants: Russell Whitney, John Kane, Michael Kane, Kane Properties, Inc., Whitney Education Group, Inc., Whitney Information Network, Inc., Wealth Intelligence Academy, Inc., Gulfstream Development Group, LLC ("Gulfstream Development"), Gulfstream Realty & Development, LLC ("Gulfstream Realty"), Gulfstream Investment Group, LLC, United Mortgage Corporation, Douglas Realty, Inc., Paradise Title Services, Inc., Brian Haag, Kevin Caraotta, David Wittig, Ashley Seibert, Real Pro, LLC, Hot Appraisals, LLC, Kevin Haag, and Douglas Haag.

"opportunities."  During the real estate courses, the students are "taught" how to identify good real estate investments, and then the students are presented with the MU Partners' investment "opportunity," which matches what the MU students were taught that they should buy.

The MU students are taught that to succeed in real estate, they must have a "Power Team," consisting of a lender, real estate broker, contractor, title company, and property manager.  The MU students are introduced to representatives of defendants Gulfstream Development (contractor), United Mortgage (lender) Douglas Realty, Inc. (real estate broker and property manager), and Paradise Title (title company), and these entities teach the students about their areas of expertise in the real estate business.

At the end of MU's Intensified Real Estate Training Course, representatives of the MU Partners tell the MU students about a "turnkey" investment program set up by the MU Partners exclusively for the MU students.  The representatives of the MU Partners tell the students that this program is so lucrative that it will pay back every dollar spent by the student for the intensified training course and give them capital to jumpstart their real estate investing careers. The representatives describe this "exclusive" turnkey investment ("MU Investment Program") as homes built by Gulfstream Development on "prime" and "premium" lots selected by Douglas Realty similar to the homes shown to the MU students in middle-class neighborhoods. Additionally, the representatives tell the MU students that this investment opportunity meets all of the conditions for making money in real estate with little risk and that the MU Partners are making this exclusive investment opportunity available for a limited time, so the students needed to invest quickly.

The MU Investment Program consisted of a home built by Gulfstream Development,

financed through United Mortgage, on a prime or premium lot located by Douglas Realty, titled

through Paradise Title, sold to MU students at a price represented to be $50,000 to $70,000

below the "current appraised value" of the property and was managed and marketed for them by

Douglas Realty afterwards.  Thus, the students were asked to rely on the expertise of the MU

Partners to (1) select a prime lot, (2) obtain the best, most appropriate financing, (3) build a well-

constructed home, and (4) market the property for sale and/or rent at or above the appraised

value.  Additionally, the MU Partners told the students that they would not overbuild the MU

Investment Program homes in a neighborhood so that the students would not have to compete

among themselves to resell their investment property.

When a student agreed to purchase one of the MU Investment Program homes, the MU

Partners sent the student a package of documents to sign in blank, which included contracts to

buy a lot, to pay Gulfstream Development to build the home, and to hire Douglas Realty and/or

Gulfstream Realty as the exclusive realtor and property manager for the property.  The MU

Partners instructed the students to immediately sign and return the blank documents to them,

after which the MU Partners filled in the lot address, price, and obligation to purchase without

any condition for financing.

 The MU Partners also directed the students to sign a mortgage brokerage contract with

United Mortgage, which contained a fraudulent appraisal value for the property.  After this

contract was signed, United Mortgage, acting for itself and as agent for the defendant Lenders,[2]

selected and arranged financing with one or more of the Lenders.  United Mortgage would

---

[2]The defendant Lenders consist of First Community Bank of Southwest Florida ("First Community Bank"), Norlarco Credit Union ("Norlarco"), Webster Bank, NA ("Webster"), The Construction Loan Company, Inc. ("CLC"), and Huron River Area Credit Union ("Huron").

represent to the students that the financing it obtained was the best financing that was available.

The fraudulent appraisal value was set by the MU Partners and required them to first determine how much money the MU Partners, CLC, Huron, and Greenbriar Real Estate Holdings, Inc. ("Greenbriar")[3] would make through the sale of the lot, construction of the home, and financing the purchase. This calculation determined the amount of the note and mortgage for the one year construction loan, which represented the purchase price charged to the MU student. After the MU Partners determined the purchase price, they arranged for an appraisal by one of the defendant Appraisers[4] that would value the property high enough for the construction loan amount to be 80% of the appraised value. Each of the Lenders knowingly accepted and utilized the fraudulent appraisals when extending financing to the students. The MU Partners' fraudulent appraisal was essential to the fraudulent scheme, because it facilitated the transaction: the defendant Lenders provided financing based on the fraudulent appraisals, which allowed the students to pay the inflated lot price, excessive construction price, and excessive closing fees to the MU Partners, CLC, Huron, and Greenbriar.

United Mortgage, CLC, and Huron would also direct the students to sign construction loan documents that represented that the home under construction would be the student's primary residence or second home, even though United Mortgage, CLC, and Huron knew that the home was being built for investment purposes. United Mortgage, CLC, and Huron did this for several reasons, including (1) to obtain a lower interest rate (which reduced interest payments

---

[3]Defendant Greenbriar is owned or controlled by the MU Partnership and was created for the purpose of acquiring properties for resale to MU students.

[4]The defendant Appraisers consisted of Real Pro, LLC, Hot Appraisals, LLC, Ashley Seibert, and David Wittig.

that Gulfstream Development agreed to pay), (2) to help ensure that the students would qualify for the loan, and (3) to lead purchasers of the mortgages and notes to believe that the purchase of the mortgages and notes was less risky because they were secured by residences rather than investment properties, which allowed United Mortgage, CLC, and Huron to sell the mortgages and notes and realize profits on the transactions.

The current appraised values of the properties were grossly and fraudulently overstated by the MU Partners.  The MU Partners, CLC, Huron, and Greenbriar did not have prime or premium lots available, nor did they obtain any.  Instead, the MU Partners purchased undesirable lots, in remote locations, with poor roads and without curbs, sidewalks, or street lighting, with some in high crime, highly vandalized areas, with only well water and septic tanks available, and then they marked up the lot prices by tens of thousands of dollars and resold them to the students for an undisclosed profit.  Additionally, the MU homes were overbuilt, which resulted, in some instances, with a single street block containing five or more of the same models for sale at the same time.  Also, participation in the MU Program was not limited to MU students, which created even more competition between the investors.

Thereafter, United Mortgage assigned notes and mortgages to defendant EMC Mortgage Corporation ("EMC") for a profit.  EMC took the assignment knowing, or it should have known, that the property values were grossly exaggerated in the fraudulent appraisals.

As a result, there is a glut of MU homes on the market, in undesirable locations, that are grossly overpriced and cannot be sold without causing a tremendous loss to the MU student investors.  Appraised values determined by independent appraisers are substantially below the defendant Appraisers' appraised values, and the students cannot sufficiently collateralize

refinancing to pay off the construction loans.  The MU students have filed suit against the MU

Partners, the Lenders, Greenbriar, and EMC based on this alleged fraudulent scheme.

### III.  Motions to Dismiss

Defendants WEG, WIN, WIA, Russell Whitney, and John Kane (who are members of the

MU Partnership and referred to as "Defendants" throughout this Order), have eight claims

asserted against them: (1) breach of fiduciary duty (Count I), (2) constructive fraud (Count III),

(3) violation of the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA") (Count IX),

(4) fraudulent inducement (Count XII), (5) civil conspiracy (Count XVI), (6) Florida RICO

conspiracy (Count XVII), (7) Federal RICO (Count XVIII), and (8) Federal RICO conspiracy

(Count XIX).[5]  These defendants move to dismiss all eight claims.

Defendants make several arguments in support of their motions to dismiss: (1) Plaintiffs

fail to adequately allege a fiduciary relationship or breach of the same; (2) Plaintiffs fail to

adequately allege any unfair or deceptive acts committed by Defendants or that Plaintiffs were

injured by those acts; (3) Plaintiffs fail to meet the particularity requirement for their fraud in the

inducement claim; (4) Plaintiffs fail to adequately allege their civil conspiracy claim; and (5)

Plaintiffs fail to allege that they were directly injured by the alleged pattern of racketeering

activity and fail to allege their RICO claims with sufficient particularity.  Accordingly, the Court

will address each argument.

#### A.  Fiduciary Relationship

Defendants first argue that Plaintiffs' breach of fiduciary duty and constructive fraud

---

[5]Plaintiffs also asserted a claim for violation of the Florida Uniform Land Sales Practices Law (Count VII), but that claim is no longer viable and was dismissed.  (Doc. No. 349).

claims fail, because they did not adequately allege a fiduciary relationship between Defendants and themselves.  Plaintiffs respond that fiduciary relationships can be implied by law when confidence is reposed by one party and trust is accepted by another.  See Capital Bank v. MVB, Inc., 644 So. 2d 515, 518 (Fla. 3d DCA 1994)(citations omitted).  Furthermore, Plaintiffs argue that they have adequately alleged that Defendants sought and acquired Plaintiffs' trust and then betrayed that trust.  Specifically, they allege that Defendants intentionally built a relationship of trust during the educational seminar by representing that the instructors were experts and that the students could rely on their expertise, and then Defendants breached that trust and took advantage of them by advising and encouraging them to invest in a fraudulent investment scheme that would directly benefit Defendants.

The Court agrees with Plaintiffs that they have adequately alleged a fiduciary relationship.  As such, the Court denies Defendants' motion on this issue.

### B.  Unfair or Deceptive Acts

Next, Defendants argue that Plaintiffs fail to adequately allege any unfair or deceptive acts committed by Defendants or that Plaintiffs were injured by those acts.  Plaintiffs respond that they have adequately alleged Defendants' unfair and deceptive acts by alleging these defendants' participation in the fraudulent investment scheme, which caused financial injury to Plaintiffs.  For example, Plaintiffs allege that Russell Whitney, WIN, WEN, and WIA advertised and conducted seminars to lure in potential investor-victims and then convince the investor-victims to rely on and trust the other members of the fraudulent scheme.  Furthermore, Plaintiffs allege that John Kane materially participated in the fraudulent scheme by actively promoting the sale of the investment properties to the students and acting as a realtor in the transactions to

8

purchase the investment properties.[6]

The Court agrees with Plaintiffs that they have sufficiently alleged Defendants' unfair or deceptive acts and resulting injury.  As such, the Court denies Defendants' motion to dismiss on this issue.

### C.  Fraud in the Inducement

Next, Defendants argue that Plaintiffs fail to meet the particularity requirement for their fraud in the inducement claim.  A review of Plaintiffs' fraud in the inducement claim reveals that it meets the particularity requirements of Rule 9(b).  Plaintiffs have alleged a complex fraudulent scheme and have clearly alleged these defendants' participation in that scheme.  Accordingly, Defendants' motion to dismiss is denied on this issue.

### D.  Civil Conspiracy

Next, Defendants argue that Plaintiffs fail to adequately allege their civil conspiracy claim.  Specifically, Defendants argue that Plaintiffs' allegations lack the required specificity, because they have not alleged the specific part that each of these defendants played in the conspiracy.  The Court rejects this argument.

As previously stated, Plaintiffs have alleged that Russell Whitney, WIN, WEN, and WIA advertised and conducted seminars to lure in potential investor-victims and then convince the investor-victims to rely on and trust the other members of the fraudulent scheme.  Furthermore,

---

[6]While this allegation is contained in paragraph 128 of the complaint, which is not incorporated into Plaintiffs' FDUTPA claim, the Court will not dismiss the claim on this technicality.  Defendants were on notice of the allegations against Kane, despite the fact that this particular allegation was not incorporated into Plaintiffs' FDUTPA claim.  The Court finds that requiring a second amended complaint to correct this minor error is not warranted, especially given that this case has been pending for more than a year.

Plaintiffs allege that John Kane materially participated in the fraudulent scheme by actively promoting the sale of the investment properties to the students and acting as a realtor in the transactions to purchase the investment properties.  As such, the Court concludes that Plaintiffs have sufficiently alleged the specific part that each of these defendants played in the conspiracy to defraud Plaintiffs.  Therefore, Defendants' motion to dismiss is denied on this issue.

### E.  Florida and Federal RICO Claims

Next, Defendants argue that Plaintiffs fail to allege that they were directly injured by the alleged pattern of racketeering activity and fail to allege their RICO claims with sufficient particularity.  Specifically, Defendants argue that Plaintiffs fail to allege how they were injured by the infomercials.  The Court disagrees.  Plaintiffs allege that Defendants regularly televised their infomercials, which lured the students to MU and then into the MU Investment Program. Plaintiffs allege that they relied on these infomercials in deciding to attend MU, which led to Plaintiffs trusting the MU Partners and investing in the fraudulent MU Investment Program.

Defendants also argue that Plaintiffs fail to allege the predicate act of mail fraud with sufficient particularity.  The Court disagrees.  Plaintiffs allege that Defendants used the mail to send advertisements and literature about the MU Program to lure individuals to become students (and later investor-victims) and that the MU Program was really a fraudulent scheme. Additionally, Plaintiffs allege that Russell Whitney sent letters to MU students that encouraged their continued involvement in the MU Program.

Defendants also argue that Plaintiffs' federal RICO conspiracy claim is not pled with sufficient particularity.  Upon review of the RICO claims, the Court finds that they comply with Rule 9(b).  Accordingly, the Court denies Defendants' motion to dismiss on this issue.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     (1) Defendants Whitney Education Group, Inc., Whitney Information Network,

Inc., Russell Whitney, and John Kane's Motion to Dismiss (Doc. No. 199) is

**DENIED**; and

(2)     Defendant Wealth Intelligence Academy, Inc.'s Motion to Dismiss (Doc. No.

328) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 4th day of December, 2008.

Susan C. Bucklew

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record