UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GLENN ACCIARD, ET AL.,

    Plaintiffs,

v.                                                Case No. 2:07-cv-476-UA-DNF

RUSSELL WHITNEY, ET AL.,

    Defendants.
_____/

**ORDER**

This cause comes before the Court on Defendant EMC Mortgage Corporation's ("EMC") Motion to Dismiss. (Doc. No. 201). Plaintiffs oppose the motion. (Doc. No. 235).

**I. Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)(citation omitted). As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion

is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

**II.  Background**

Plaintiffs, purchasers of property due to an allegedly fraudulent scheme, allege the following in their amended complaint (Doc. No. 190): Plaintiffs are students of Millionaire University ("MU"), a program consisting of real estate seminars.  Plaintiffs contend that a group of individuals and entities joined together to sell, develop, finance, market, and manage real estate to and for MU students.  Plaintiffs refer to this group as the Millionaire University Partners ("MU Partners").[1]

Plaintiffs allege that the MU Partners enticed people to invest in real estate through real estate educational courses in which they, along with other entities, intentionally built a relationship of trust with the "students" to whom they then pitched their real estate investment "opportunities."  During the real estate courses, the students are "taught" how to identify good real estate investments, and then the students are presented with the MU Partners' investment "opportunity," which matches what the MU students were taught that they should buy.

The MU students are taught that to succeed in real estate, they must have a "Power

---

[1]The MU Partners are the following twenty-one defendants: Russell Whitney, John Kane, Michael Kane, Kane Properties, Inc., Whitney Education Group, Inc., Whitney Information Network, Inc., Wealth Intelligence Academy, Inc., Gulfstream Development Group, LLC ("Gulfstream Development"), Gulfstream Realty & Development, LLC ("Gulfstream Realty"), Gulfstream Investment Group, LLC, United Mortgage Corporation, Douglas Realty, Inc., Paradise Title Services, Inc., Brian Haag, Kevin Caraotta, David Wittig, Ashley Seibert, Real Pro, LLC, Hot Appraisals, LLC, Kevin Haag, and Douglas Haag.

Team," consisting of a lender, real estate broker, contractor, title company, and property manager. The MU students are introduced to representatives of defendants Gulfstream Development (contractor), United Mortgage (lender) Douglas Realty, Inc. (real estate broker and property manager), and Paradise Title (title company), and these entities teach the students about their areas of expertise in the real estate business.

At the end of MU's Intensified Real Estate Training Course, representatives of the MU Partners tell the MU students about a "turnkey" investment program set up by the MU Partners exclusively for the MU students. The representatives of the MU Partners tell the students that this program is so lucrative that it will pay back every dollar spent by the student for the intensified training course and give them capital to jumpstart their real estate investing careers. The representatives describe this "exclusive" turnkey investment ("MU Investment Program") as homes built by Gulfstream Development on "prime" and "premium" lots selected by Douglas Realty similar to the homes shown to the MU students in middle-class neighborhoods. Additionally, the representatives tell the MU students that this investment opportunity meets all of the conditions for making money in real estate with little risk and that the MU Partners are making this exclusive investment opportunity available for a limited time, so the students needed to invest quickly.

The MU Investment Program consisted of a home built by Gulfstream Development, financed through United Mortgage, on a prime or premium lot located by Douglas Realty, titled through Paradise Title, sold to MU students at a price represented to be $50,000 to $70,000 below the "current appraised value" of the property and was managed and marketed for them by Douglas Realty afterwards. Thus, the students were asked to rely on the expertise of the MU

Partners to (1) select a prime lot, (2) obtain the best, most appropriate financing, (3) build a well-constructed home, and (4) market the property for sale and/or rent at or above the appraised value. Additionally, the MU Partners told the students that they would not overbuild the MU Investment Program homes in a neighborhood so that the students would not have to compete among themselves to resell their investment property.

When a student agreed to purchase one of the MU Investment Program homes, the MU Partners sent the student a package of documents to sign in blank, which included contracts to buy a lot, to pay Gulfstream Development to build the home, and to hire Douglas Realty and/or Gulfstream Realty as the exclusive realtor and property manager for the property. The MU Partners instructed the students to immediately sign and return the blank documents to them, after which the MU Partners filled in the lot address, price, and obligation to purchase without any condition for financing.

The MU Partners also directed the students to sign a mortgage brokerage contract with United Mortgage, which contained a fraudulent appraisal value for the property. After this contract was signed, United Mortgage, acting for itself and as agent for the defendant Lenders,[2] selected and arranged financing with one or more of the Lenders. United Mortgage would represent to the students that the financing it obtained was the best financing that was available.

The fraudulent appraisal value was set by the MU Partners and required them to first determine how much money the MU Partners, CLC, Huron, and Greenbriar Real Estate

---

[2] The defendant Lenders consist of First Community Bank of Southwest Florida ("First Community Bank"), Norlarco Credit Union ("Norlarco"), Webster Bank, NA ("Webster"), The Construction Loan Company, Inc. ("CLC"), and Huron River Area Credit Union ("Huron").

Holdings, Inc. ("Greenbriar")[3] would make through the sale of the lot, construction of the home, and financing the purchase. This calculation determined the amount of the note and mortgage for the one year construction loan, which represented the purchase price charged to the MU student. After the MU Partners determined the purchase price, they arranged for an appraisal by one of the defendant Appraisers[4] that would value the property high enough for the construction loan amount to be 80% of the appraised value. Each of the Lenders knowingly accepted and utilized the fraudulent appraisals when extending financing to the students. The MU Partners' fraudulent appraisal was essential to the fraudulent scheme, because it facilitated the transaction: the defendant Lenders provided financing based on the fraudulent appraisals, which allowed the students to pay the inflated lot price, excessive construction price, and excessive closing fees to the MU Partners, CLC, Huron, and Greenbriar.

United Mortgage, CLC, and Huron would also direct the students to sign construction loan documents that represented that the home under construction would be the student's primary residence or second home, even though United Mortgage, CLC, and Huron knew that the home was being built for investment purposes. United Mortgage, CLC, and Huron did this for several reasons, including (1) to obtain a lower interest rate (which reduced interest payments that Gulfstream Development agreed to pay), (2) to help ensure that the students would qualify for the loan, and (3) to lead purchasers of the mortgages and notes to believe that the purchase of the mortgages and notes was less risky because they were secured by residences rather than

---

[3]Defendant Greenbriar is owned or controlled by the MU Partnership and was created for the purpose of acquiring properties for resale to MU students.

[4]The defendant Appraisers consisted of Real Pro, LLC, Hot Appraisals, LLC, Ashley Seibert, and David Wittig.

investment properties, which allowed United Mortgage, CLC, and Huron to sell the mortgages and notes and realize profits on the transactions.

The current appraised values of the properties were grossly and fraudulently overstated by the MU Partners. The MU Partners, CLC, Huron, and Greenbriar did not have prime or premium lots available, nor did they obtain any. Instead, the MU Partners purchased undesirable lots, in remote locations, with poor roads and without curbs, sidewalks, or street lighting, with some in high crime, highly vandalized areas, with only well water and septic tanks available, and then they marked up the lot prices by tens of thousands of dollars and resold them to the students for an undisclosed profit. Additionally, the MU homes were overbuilt, which resulted, in some instances, with a single street block containing five or more of the same models for sale at the same time. Also, participation in the MU Program was not limited to MU students, which created even more competition between the investors.

Thereafter, United Mortgage assigned notes and mortgages to EMC for a profit. EMC took the assignment knowing, or it should have known, that the property values were grossly exaggerated in the fraudulent appraisals. Plaintiffs allege that EMC took the assignment of the notes and mortgages subject to the defenses and claims of Plaintiffs.

As a result, there is a glut of MU homes on the market, in undesirable locations, that are grossly overpriced and cannot be sold without causing a tremendous loss to the MU student investors. Appraised values determined by independent appraisers are substantially below the defendant Appraisers' appraised values, and the students cannot sufficiently collateralize refinancing to pay off the construction loans. The MU students have filed suit against the MU Partners, the Lenders, Greenbriar, and EMC based on this alleged fraudulent scheme.

### III. Motion to Dismiss

Plaintiffs have asserted five claims against EMC: (1) constructive fraud (Count III), (2) violation of the mortgage brokerage and lending laws (Count V), (3) violation of the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA") (Count IX), (4) fraudulent inducement (Count XII), and (5) violation of Florida's Consumer Collection Practices Act ("FCCPA") (Count XX). EMC moves to dismiss all five claims.

EMC argues that the claims should be dismissed because: (1) the remedy of rescission is not available, because Plaintiffs have an adequate remedy at law; (2) Plaintiffs fail to meet the pleading requirements of Rules 8 and 9, and as such, EMC is not on notice of its alleged wrongdoing; (3) Plaintiffs fail to state an FCCPA claim, FDUTPA claim, or a claim for a violation of the mortgage lending laws; (4) EMC is not an indispensable party, and as such, it should be dismissed; and (5) EMC is a bona fide assignee, and as such, it is not liable for the actions of the assignor, United Mortgage. Accordingly, the Court will address each argument.

#### A. Rescission

EMC argues that the remedy of rescission is not available, because Plaintiffs have an adequate remedy at law. The Court rejects this argument, because rescission can be an appropriate remedy for fraud. See Arad v. Caduceus Self Ins. Fund, Inc., 585 So. 2d 1000, 1004 (Fla. 4th DCA 1991); Ganaway v. Henderson, 103 So. 2d 693, 695 (Fla. 1st DCA 1958). Furthermore, "a court is rarely able to determine the adequacy of a remedy at law at the pleading stage of a case before the facts are developed." Billian v. Mobil Corp., 710 So. 2d 984, 991 (Fla. 4th DCA 1998). As such, the Court denies EMC's motion on this issue.

### B. Assignee Status

Next, EMC argues that it is a bona fide assignee, and as such, it cannot be liable for the actions of the assignor, United Mortgage. The Court rejects this argument, because "the general assignment of a note and mortgage conveys to the assignee [EMC] the rights of the assignor [United Mortgage] under the note and mortgage (subject to the equities and defenses of the obligor [Plaintiffs])." Law Office of David Stern, P.A. v. Security National Servicing Corp., 969 So. 2d 962, 968-69 (Fla. 2007). Thus, Plaintiffs argue that EMC, as the assignee, steps into the shoes of United Mortgage, the assignor. See University Creek Associates II, Ltd. v. Boston American Financial Group, Inc., 100 F. Supp.2d 1337, 1341 (S.D. Fla. 1998)(citing State v. Family Bank of Hallandale, 667 So. 2d 257, 259 (Fla. 1st DCA 1995)). Accordingly, the Court denies EMC's motion on this issue.

### C. Pleading Requirements

Next, EMC argues that Plaintiffs fail to meet the pleading requirements of Rules 8 and 9, and as such, EMC is not on notice of its alleged wrongdoing and the claims against it should be dismissed. Plaintiffs point out that they are suing EMC, in part, because EMC is the assignee of certain notes and mortgages, and EMC took the assignment subject to the defenses and claims of Plaintiffs. Thus, Plaintiffs allege that EMC stands in the shoes of the assignor, United Mortgage.

The Court finds that the fraud claims meet the pleading requirements of Rule 9, as Plaintiffs set forth the acts of United Mortgage with sufficient particularity, and EMC is alleged to stand in the shoes of United Mortgage. Furthermore, the remaining claims meet the notice pleading requirements of Rule 8. Accordingly, the Court denies EMC's motion on this issue.

### D. FDUTPA Claim and Claim for Violation of Mortgage Lending Laws

Next, EMC argues that Plaintiffs fail to state a FDUTPA claim or a claim for a violation of the mortgage lending laws. Again, EMC's argument is based on its contention that Plaintiffs do not allege EMC's specific misconduct. As stated above, the Court rejects this argument, as EMC is being sued, in part, because EMC is the assignee of certain notes and mortgages, and as such, EMC is alleged to stand in the shoes of United Mortgage. Accordingly, the Court denies EMC's motion on this issue.

### E. FCCPA Claim

Next, EMC argues that Plaintiffs fail to state an FCCPA claim. Another Defendant, The Construction Loan Company, Inc., argued that this claim should be dismissed because the debts at issue (the mortgages) were not consumer debts, and as such, the FCCPA does not apply. The Court agrees, and as such, it need not reach EMC's arguments on this issue.

Plaintiffs allege that certain defendants violated Florida Statute § 559.72 of the FCCPA. The statute begins with the phrase: "In collecting consumer debts, no person shall . . .." Thus, the statute at issue only applies to consumer debts, which the FCCPA defines, in pertinent part, as: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction *are primarily for personal, family, or household purposes*." Fla. Stat. § 559.55(1)(emphasis added). Plaintiffs clearly allege that the mortgages are on properties that are being held for investment purposes. (Doc. No. 190, ¶ 78). Therefore, Plaintiffs cannot assert a claim for a violation of the FCCPA under the facts of this case, and as such, the Court dismisses this claim

against all of the defendants that it is asserted against.[5]

### F. Indispensable Party

Next, EMC argues that it is not an indispensable party, and as such, it should be dismissed. Plaintiffs respond that the relevant inquiry is whether EMC is a *proper* party, not whether it is an indispensable party. Furthermore, Plaintiffs argue that EMC is a proper party under Federal Rule of Civil Procedure 20, which sets forth the rule for permissive joinder of defendants. The Court agrees and denies EMC's motion on this issue.

### IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that EMC's Motion to Dismiss (Doc. No. 201) is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** to the extent that the Court dismisses the FCCPA claim; otherwise, the motion is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 4th day of December, 2008.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

---

[5] The FCCPA claim is asserted against Gulfstream Development, Huron, EMC, Webster, and CLC.