UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GLENN ACCIARD, ET AL.,

       Plaintiffs,

v.                                                  Case No.  2:07-cv-476-UA-DNF

RUSSELL WHITNEY, ET AL.,

       Defendants.

_____/

**ORDER**

This cause comes before the Court on Defendant Construction Loan Company, Inc.'s ("CLC") motion to sever due to misjoinder.  (Doc. No. 203).  Plaintiffs oppose the motion (Doc. No. 223, 277), and CLC filed a reply brief (Doc. No. 314).

**I.  Standard of Review**

Federal Rule of Civil Procedure 21 authorizes a court "to dismiss any misjoined party or claim at any stage of a lawsuit."  Harris v. Johns, 2007 WL 2310784, at *3 (M.D. Fla. Aug. 8, 2007).  Courts are "given discretion to decide the scope of the civil action and to make such orders as will prevent delay or prejudice."  City of Tampa v. Fourth Tug/Barge Corp., 163 F.R.D. 622, 624 (M.D. Fla. 1995)(citations omitted).

Misjoinder occurs when parties fail to satisfy Federal Rule of Civil Procedure 20(a).  See Harris, 2007 WL 2310784, at *3.  Rule 20(a) provides: "Persons may join in one action as plaintiffs if: (A) they assert any right to relief . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."

Courts "employ a liberal approach to permissive joinder of claims *and* parties in the interest of judicial economy: 'Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encourage.'" Alexander v. Fulton County, GA, 207 F.3d 1303, 1323 (11th Cir. 2000)(quoting United Mine Workers v. Gibbs, 383 U.S. 715, 724 (1966)).  Therefore, "all logically related events entitling a person to institute a legal action against another generally are regarded as compromising a transaction or occurrence." Id. (internal quotation marks and citation omitted).  Furthermore, Rule 20 "does not require that *all* questions of law and fact raised by the dispute be common, but only that *some* question of law or fact be common to all parties." Id. at 1324 (citation omitted).  "The touchstone of Rule 20 joinder/severance analysis is whether the interests of efficiency and judicial economy would be advanced by allowing the claims to travel together, and whether any party would be prejudiced if they did." Fisher v. Ciba Specialty Chemicals Corp., 245 F.R.D. 539, 542 (S.D. Ala. 2007).

## II.  Background

Plaintiffs, purchasers of property due to an allegedly fraudulent scheme, allege the following in their amended complaint (Doc. No. 190): Plaintiffs are students of Millionaire University ("MU"), a program consisting of real estate seminars.  Plaintiffs contend that a group of individuals and entities joined together to sell, develop, finance, market, and manage real estate to and for MU students.  Plaintiffs refer to this group as the Millionaire University Partners ("MU Partners").[1]

---

[1]The MU Partners are the following twenty-one defendants: Russell Whitney, John Kane, Michael Kane, Kane Properties, Inc., Whitney Education Group, Inc., Whitney Information Network, Inc., Wealth Intelligence Academy, Inc., Gulfstream Development Group, LLC

Plaintiffs allege that the MU Partners enticed people to invest in real estate through real estate educational courses in which they, along with other entities, intentionally built a relationship of trust with the "students" to whom they then pitched their real estate investment "opportunities."  During the real estate courses, the students are "taught" how to identify good real estate investments, and then the students are presented with the MU Partners' investment "opportunity," which matches what the MU students were taught that they should buy.

The MU students are taught that to succeed in real estate, they must have a "Power Team," consisting of a lender, real estate broker, contractor, title company, and property manager.  The MU students are introduced to representatives of defendants Gulfstream Development (contractor), United Mortgage (lender) Douglas Realty, Inc. (real estate broker and property manager), and Paradise Title (title company), and these entities teach the students about their areas of expertise in the real estate business.

At the end of MU's Intensified Real Estate Training Course, representatives of the MU Partners tell the MU students about a "turnkey" investment program set up by the MU Partners exclusively for the MU students.  The representatives of the MU Partners tell the students that this program is so lucrative that it will pay back every dollar spent by the student for the intensified training course and give them capital to jumpstart their real estate investing careers. The representatives describe this "exclusive" turnkey investment ("MU Investment Program") as homes built by Gulfstream Development on "prime" and "premium" lots selected by Douglas

---

("Gulfstream Development"), Gulfstream Realty & Development, LLC ("Gulfstream Realty"), Gulfstream Investment Group, LLC, United Mortgage Corporation, Douglas Realty, Inc., Paradise Title Services, Inc., Brian Haag, Kevin Caraotta, David Wittig, Ashley Seibert, Real Pro, LLC, Hot Appraisals, LLC, Kevin Haag, and Douglas Haag.

3

Realty similar to the homes shown to the MU students in middle-class neighborhoods. Additionally, the representatives tell the MU students that this investment opportunity meets all of the conditions for making money in real estate with little risk and that the MU Partners are making this exclusive investment opportunity available for a limited time, so the students needed to invest quickly.

The MU Investment Program consisted of a home built by Gulfstream Development, financed through United Mortgage, on a prime or premium lot located by Douglas Realty, titled through Paradise Title, sold to MU students at a price represented to be $50,000 to $70,000 below the "current appraised value" of the property and was managed and marketed for them by Douglas Realty afterwards.  Thus, the students were asked to rely on the expertise of the MU Partners to (1) select a prime lot, (2) obtain the best, most appropriate financing, (3) build a well-constructed home, and (4) market the property for sale and/or rent at or above the appraised value.  Additionally, the MU Partners told the students that they would not overbuild the MU Investment Program homes in a neighborhood so that the students would not have to compete among themselves to resell their investment property.

When a student agreed to purchase one of the MU Investment Program homes, the MU Partners sent the student a package of documents to sign in blank, which included contracts to buy a lot, to pay Gulfstream Development to build the home, and to hire Douglas Realty and/or Gulfstream Realty as the exclusive realtor and property manager for the property.  The MU Partners instructed the students to immediately sign and return the blank documents to them, after which the MU Partners filled in the lot address, price, and obligation to purchase without any condition for financing.

4

The MU Partners also directed the students to sign a mortgage brokerage contract with United Mortgage, which contained a fraudulent appraisal value for the property.  After this contract was signed, United Mortgage, acting for itself and as agent for the defendant Lenders,[2] selected and arranged financing with one or more of the Lenders.  United Mortgage would represent to the students that the financing it obtained was the best financing that was available.

The fraudulent appraisal value was set by the MU Partners and required them to first determine how much money the MU Partners, CLC, Huron, and Greenbriar Real Estate Holdings, Inc. ("Greenbriar")[3] would make through the sale of the lot, construction of the home, and financing the purchase.  This calculation determined the amount of the note and mortgage for the one year construction loan, which represented the purchase price charged to the MU student.  After the MU Partners determined the purchase price, they arranged for an appraisal by one of the defendant Appraisers[4] that would value the property high enough for the construction loan amount to be 80% of the appraised value.  Each of the Lenders knowingly accepted and utilized the fraudulent appraisals when extending financing to the students.  The MU Partners' fraudulent appraisal was essential to the fraudulent scheme, because it facilitated the transaction: the defendant Lenders provided financing based on the fraudulent appraisals, which allowed the students to pay the inflated lot price, excessive construction price, and excessive closing fees to

[2]The defendant Lenders consist of First Community Bank of Southwest Florida ("First Community Bank"), Norlarco Credit Union ("Norlarco"), Webster Bank, NA ("Webster"), The Construction Loan Company, Inc. ("CLC"), and Huron River Area Credit Union ("Huron").

[3]Defendant Greenbriar is owned or controlled by the MU Partnership and was created for the purpose of acquiring properties for resale to MU students.

[4]The defendant Appraisers consisted of Real Pro, LLC, Hot Appraisals, LLC, Ashley Seibert, and David Wittig.

the MU Partners, CLC, Huron, and Greenbriar.

United Mortgage, CLC, and Huron would also direct the students to sign construction loan documents that represented that the home under construction would be the student's primary residence or second home, even though United Mortgage, CLC, and Huron knew that the home was being built for investment purposes. United Mortgage, CLC, and Huron did this for several reasons, including (1) to obtain a lower interest rate (which reduced interest payments that Gulfstream Development agreed to pay), (2) to help ensure that the students would qualify for the loan, and (3) to lead purchasers of the mortgages and notes to believe that the purchase of the mortgages and notes was less risky because they were secured by residences rather than investment properties, which allowed United Mortgage, CLC, and Huron to sell the mortgages and notes and realize profits on the transactions.

The current appraised values of the properties were grossly and fraudulently overstated by the MU Partners. The MU Partners, CLC, Huron, and Greenbriar did not have prime or premium lots available, nor did they obtain any. Instead, the MU Partners purchased undesirable lots, in remote locations, with poor roads and without curbs, sidewalks, or street lighting, with some in high crime, highly vandalized areas, with only well water and septic tanks available, and then they marked up the lot prices by tens of thousands of dollars and resold them to the students for an undisclosed profit. Additionally, the MU homes were overbuilt, which resulted, in some instances, with a single street block containing five or more of the same models for sale at the same time. Also, participation in the MU Program was not limited to MU students, which created even more competition between the investors.

Thereafter, United Mortgage assigned notes and mortgages to defendant EMC Mortgage

Corporation ("EMC") for a profit.  EMC took the assignment knowing, or it should have known, that the property values were grossly exaggerated in the fraudulent appraisals.

As a result, there is a glut of MU homes on the market, in undesirable locations, that are grossly overpriced and cannot be sold without causing a tremendous loss to the MU student investors.  Appraised values determined by independent appraisers are substantially below the defendant Appraisers' appraised values, and the students cannot sufficiently collateralize refinancing to pay off the construction loans.  The MU students have filed suit against the MU Partners, the Lenders, Greenbriar, and EMC based on this alleged fraudulent scheme.

## III.  Motion to Sever

CLC moves to sever the claims and parties in this case, arguing that the claims are based on numerous distinct transactions, the claims are not based on common factual or legal questions, and the joinder of the claims and parties does not promote efficiency, convenience, or fundamental fairness.  The Court disagrees.

The claims in this case result from one alleged fraudulent scheme.  Specifically, Plaintiffs were MU students that attended the same courses where Defendants and their agents primed them for the same sales pitch and utilized the teacher-student relationship to gain Plaintiffs' trust.  Plaintiffs contend that they received virtually the same sales literature and information regarding the MU Investment Program and that the fraudulent scheme entailed each Plaintiff receiving a fraudulent, overvalued appraisal of their property.

Upon consideration, the Court finds that joinder of the claims and parties is proper under Rule 20(a), it will promote judicial economy, and it will not cause any prejudice due to the joinder.  As such, the motion to sever is denied.

**IV. Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that CLC's Motion to Sever (Doc. No.

203) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 4th day of December, 2008.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

8