## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

GLENN ACCIARD, et al.,

      Plaintiffs,

v.                               CASE NO. 2:07-CV-00476-FtM-36DNF

RUSSELL WHITNEY, et al.,

      Defendants.

_____/

## ORDER

      This cause comes before the Court on the Defendant/Counter-Claimant National Credit Union Administration's ("NCUA") Motion for Summary Judgment on its Amended Counterclaim ("Motion for Summary Judgment") (Doc. 732). Plaintiffs/Counter-Defendants[1] (the "Borrowers") filed a Memorandum in Opposition to the Motion for Summary Judgment (Doc. 893), to which the NCUA replied (Doc. 932). Oral argument on the motion was held on August 22, 2011. Upon due consideration of the record before this Court, the NCUA's Motion for Summary Judgment will be denied.

## BACKGROUND

      From 2005 through 2006, the Construction Loan Company, Inc. ("CLC") issued loans to the Borrowers that were secured by mortgages on real property located in Florida. In return for the

---

[1]The Plaintiffs/Counter-Defendants who join in this Motion are Howard Amberg, Jonathan Bates, Cynille Bates, Ann Bedwell, Robert Forscutt, Bruce and Mitzi Ghiloni, George and Noemi Hernandez, Wayne Kacher, Catherine and Kenneth Kapp, Frederick Laubach, Peter and Lynda Lewis, Donald and Nina Long, Tari Marek, Elizabeth Montgomery, Jeff Montgomery, Richard and Carol Shifflett, Merritt Silcox, James Wolfe, Joan Wright, and Andrew Long.

loans, the Borrowers executed and delivered notes to CLC.  Thereafter, those notes and mortgages were assigned to Huron River Area Credit Union ("Huron") by CLC.  On March 13, 2007, various plaintiffs, including the Borrowers, initiated an action against Huron and others in a multi-count complaint in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida. (Doc. 2).  The cause of action was removed to the Ft. Myers Division of the Middle District of Florida on July 31, 2007.  (Doc. 1).

On November 17, 2007, NCUA placed Huron into involuntary liquidation and became the liquidating agent of Huron.  (Doc. 671-4).  As liquidating agent, NCUA enjoyed all right and title to Huron's assets.  As a result of the Borrowers having failed to repay the principal and accumulated interest upon maturity of the notes, NCUA filed a counterclaim against the Borrowers on January 19, 2010 (Doc. 611)[2] seeking to foreclose on the mortgages and obtain judgments on the notes. NCUA also filed a Motion for Summary Judgment (Doc. 612) on the Plaintiffs' claim against it, arguing that the doctrine established in *D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. 447 (1942) barred all claims against it.  Subsequently, the NCUA amended its Counterclaim (Doc. 671).  On September 17, 2010, the Court granted the NCUA's  Motion for Summary Judgment primarily on the ground  that the Plaintiffs' claims were barred by the *D'Oench* doctrine.  (Doc. 674).

The Borrowers then filed an Answer and Affirmative Defenses (Doc. 676) on September 20, 2010 in reply to NCUA's Amended Counterclaim.  The Borrowers supplemented their Answer on October 12, 2010, with an Amended Answer (Doc. 693), which included seven new affirmative defenses (Doc. 693, pp. 158-162).  Affirmative Defenses 30-36 primarily relate to the Construction

---

[2]On March 17, 2008, the Borrowers submitted their claims administratively to NCUA, as required by 12 U.S.C. § 1787(b)(5)-(11).  *See* Doc. 733-2.  The Borrowers' claims were denied on May 8, 2008.  *Id.*

Loan Agreements the Borrowers entered into. *Id*. On November 30, 2010, the NCUA filed the instant Motion for Summary Judgment. (Doc. 732).

## <u>LEGAL STANDARD</u>

Summary judgment is appropriate only when the court is satisfied that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law" after reviewing the "pleadings, the discovery and disclosure materials on file, and any affidavits . . . ". Fed. R. Civ. P. 56(c)(2). Issues of facts are "genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. *Id.* The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## <u>ANALYSIS</u>

NCUA seeks entry of a summary final judgment foreclosing mortgages made by Borrowers, which are now held by NCUA and for money damages on the promissory notes made by Borrowers and now held by NCUA. NCUA contends that the borrowers failed to repay the principal and

accumulated interest upon maturity of the promissory notes.  NCUA further contends that the Borrowers' affirmative defenses all fail as a matter of law.  Specifically, NCUA asserts that Affirmative Defenses 1 through 29 are barred by the law of the case doctrine and Affirmative Defenses 30 through 36 are barred due to failure to exhaust administrative remedies.  The Borrowers oppose the motion contending that NCUA has failed to address the substance of their affirmative defenses numbered 1 through 36, that they exhausted their administrative remedies, and that genuine issues of material fact exist to preclude the entry of summary judgment.

In support of its Motion for Summary Judgment, NCUA  filed an affidavit of John Monk and the original notes and mortgages (Docs. 733-748).  It is undisputed that the Borrowers failed to repay the principal and accumulated interest upon maturity of the notes.  Here, the dispute pertains to the Borrowers' affirmative defenses.

**1.  The Borrowers' Affirmative Defenses 1-29 Will Not Be Reconsidered By the Court**

Under the law of the case doctrine, "an issue decided at one stage of a case is binding at later stages of the same case."  *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1288-89 (11th Cir. 2009) (quoting *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997). This doctrine applies to any issues where there has been a final judgment. *Id*. citing *Gregg v. United States*, 715 F.2d 1522, 1530 (11th Cir. 1983).  Moreover, a ruling on a motion for summary judgment constitutes law of the case on issues decided.  *See United States v. Horton*, 622 F.2d 144, 148 (5th Cir. 1980).  The law of the case doctrine is "predicated on the premise that 'there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions . . . '".  *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967) (quoting *Roberts v. Cooper*, 61 U.S. 467, 481, 15 L.Ed. 969 (1857).

In the Borrowers' Amended Answer (Doc. 693), they assert various defenses to the NCUA's Amended Counterclaim. In particular, Affirmative Defenses 1 through 29 relate to the alleged fraudulent and illegal acts and omissions by Huron, which the Borrowers argue should defeat NCUA's counterclaims. *Id.* However, this Court has previously addressed and dismissed with prejudice each of the claims and allegations that form the basis of Affirmative Defenses 1 through 29. (Doc. 674). In that Order, the Court found that the Borrowers' "illegality" argument failed and the allegedly fraudulent character of the appraisals was not facially apparent. *Id.* As such, the Borrowers' claims were found to be barred by the *D'Oench* doctrine. *Id.* Further, that Order became the law of the case when the Court denied the Borrowers' Motion for Reconsideration. (Doc. 1003).

Consequently, the underlying arguments that serve as the basis for the Borrowers' Affirmative Defenses 1 through 29 have already been considered and rejected by the Court. *See* Doc. 674. Moreover, a judgment has been rendered on these issues. *See* Doc. 675. Pursuant to the law of the case doctrine, these issues have been decided, are binding, and will not be reconsidered. The Borrowers Affirmative Defenses 1 through 29 are barred by the *D'Oench* doctrine.

In the Borrowers' Amended Answer, they provide seven additional affirmative defenses ("Affirmative Defenses 30 through 36"), primarily concerning the Construction Loan Agreements. (Doc. 693, pp. 159-63). These Affirmative Defenses, 30 through 36, have not yet been considered by the Court. As such, their consideration is not barred by the law of the case doctrine.

## 2. The Foreclosure Defendants Are Not Administratively Barred From Bringing Affirmative Defenses 30-36

The Federal Credit Union Act (FCUA) was enacted to establish a system of credit unions to facilitate stabilization of the nation's credit structure and to achieve increased availability of loans.

12 U.S.C. § 1751 *et seq.* Section 1787 of the FCUA governs the liquidation of federally insured credit unions and provides an administrative claim procedure which serves as a jurisdictional prerequisite to litigation. Pursuant to this administrative scheme, a prospective plaintiff wishing to assert a "claim" against the assets of a failed credit union must submit an administrative claim within a defined period. *See* 12 U.S.C. § 1787(b)(5)-(11). A prospective plaintiff's failure to follow these procedures divests the district court of jurisdiction over the prospective claim. *See* 12 U.S.C. §1751(b)(13)(D).

The implementing regulations of § 1787 provide little guidance in defining a "claim" as "a creditor's claim against the credit union in liquidation." 12 C.F.R. § 709.1(d); *see also* 12 C.F.R. § 709. Additionally, the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA)[3] does not define the terms claim or creditor either. *See* PL 101-73, 1989 HR 1278. However, various courts have found that with regard to FIRREA, the Bankruptcy Code provides the most promising source to turn to in defining those terms. *See Nat'l Union Fire Insurance Co. v. City Savings, F.S.B.*, 28 F.3d 376, 386 (3rd Cir. 1994) (applying the definitions of claim and creditor from the Bankruptcy Code); *see also Elmco Properties, Inc. v. Second Nat. Fed. Sav. Ass'n*, 94 F.3d 914, 919 (4th Cir. 1996); *Office & Professional Employees Int'l Union, Local 2 v. F.D.I.C.*, 962 F.2d 63, 68 (D.C. Cir. 1982).

To that end, the Bankruptcy Code defines a claim as follows:

---

[3]FIRREA provides nearly identical provisions for the liquidation of failed depository institutions by the Resolution Trust Corporation and of failed Federal Credit Unions by the National Credit Union Administration Board. As such, the liquidation rules of the respective agencies are used interchangeably. *See, e.g. National Credit Union Admin. Bd. v. Lormet Community Federal Credit Union*, 2010 WL 4806794 at *6 (N.D.Ohio Nov. 18, 2010) ("The exhaustion requirements contained in FIRREA and FCUA are nearly identical.").

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5); *see also Nat'l Union Fire Ins. Co.,* 28 F.3d at 387 (finding a "claim" or "creditor's claim" is essentially an action asserting a right to payment).

In defending against the instant motion for summary judgment, the Borrowers are not asserting a right to payment in Affirmative Defenses 30 through 36. Rather, they are merely asserting affirmative defenses seeking to defeat NCUA's foreclosure action. *See Royal Palm Sav. Ass'n v. Pine Trace Corp.*, 716 F. Supp. 1416, 1420 (M.D. Fla. 1989) ("An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matters"). The NCUA's foreclosure action was initiated almost two years after the Borrowers completed the administrative claims process. Further, by asserting affirmative defenses 30 through 36, the Borrowers do not seek to collect money from the NCUA. They are simply defending against the foreclosure action. Thus, because the Borrowers are not asserting claims but rather affirmative defenses, NCUA's argument that Plaintiffs are administratively barred from bringing these defenses fails.

NCUA cites *Commonwealth of Mass. v. Secretary of Agriculture* for the proposition that there are three purposes behind requiring a party to develop all of their arguments in the administrative setting before seeking judicial review: (1) creating a more finely tuned record for judicial review; (2) promoting judicial economy; and (3) enforcing agency autonomy. *Commonwealth of Mass. v. Secretary of Agriculture,* 984 F.2d 514, 523 (6th Cir. 1998); Doc. 732, p. 19. If NCUA's broad definition of claim were adopted and the Borrowers were precluded from

bringing their affirmative defenses, the Court would essentially be requiring all mortgagees to anticipate the future possibility of a foreclosure action and to raise that possibility at the moment of the lender's failure rather than at the time of the actual foreclosure action. Moreover, this would all be required without the benefit of discovery. This type of guesswork would only confuse the record for judicial review and undermine judicial economy by requiring the filing of potential affirmative defenses to claims that may never be filed. As such, the purposes for developing arguments in the administrative setting proffered in *Commonwealth of Mass.* would not be furthered by the adoption of NCUA's definition.

NCUA cites *U.S. v. Savarese* to support its contention that the failure to exhaust administrative remedies precludes the Borrowers from relying on those defenses to defeat NCUA's claims. *U.S. v. Savarese,* 515 F.Supp. 533 (S.D.Fla. 1981). In *Savarese*, an insurance carrier determined the defendant had been overpaid by the Medicare program. *Id.* at 535. A demand for that amount was sent to the defendant along with materials stating that a request for a hearing must be made within six months of the letter. *Id.* During the allotted time frame, the defendant neither requested a hearing nor submitted any additional evidence. *Id.* Subsequently, the defendant passed away and a claim for the amount of the indebtedness was filed against his estate. *Id.* at 536. In response to the claim, the defendant's estate argued the amount of the alleged overpayment was inaccurate. *Id.* However, the court found the decedent's failure to timely exhaust his administrative remedies barred judicial review of that determination. *Id.*

*Savarese* is factually distinguishable from the instant case. In *Savarese*, the defendant was given full and fair notice and opportunity to object to the claims which had been brought against him. However, the amount of the overpayment was not objected to until long after the ending of the

administrative period.  In the instant case, the Borrowers availed themselves of the administrative

process by filing their claims administratively on March 17, 2008, which were denied on May 8,

2008.  *See* Doc. 733-2.  Subsequently, NCUA filed its counterclaim against the Borrowers on

January 19, 2010, to which the Borrowers now object.  (Doc. 611).  The action to which the

Borrowers now assert Affirmative Defenses 30 through 36 had not even been brought until almost

two years after the closing of the administrative period.  Therefore, the *Savarese* reasoning is

inapplicable to the case at hand.  Here, the Borrowers properly raised their claims pursuant to the

administrative claims procedure.  They could not, however, raise defenses in an administrative

proceeding to a yet-to-be filed foreclosure action against them.

### 3.  Affirmative Defenses 30, 31, 34 and 35 Raise Genuine Issues of Material Fact, Which Preclude Summary Judgment

<u>*Affirmative Defenses 30, 31, and 34*</u>

"It is axiomatic that the anticipatory breach of a contract by one party excuses contractual

compliance by the other."  *Fabel v. Masterson*, 951 So.2d 934, 936 (Fla. 4th DCA 2007); *see also*

*Jones v. Warmack*, 967 So.2d 400, 402 (Fla. 1st DCA 2007); *Posik v. Layton*, 695 So.2d 759, 762

(Fla. 5th DCA 1997).  In Affirmative Defenses 30, 31, and 34, the Borrowers allege various

instances of material breach of contract, which the Borrowers claim excuse their duty to perform and

terminate any right of the note holder to declare a default.

In Affirmative Defense 30, the Borrowers allege the contract was materially breached when

the lender failed to advance funds only upon the request of the Borrowers, and instead advanced

funds at the builder's request without advance notice to the Borrowers.  (Doc. 682, p. 158-59).  In

Affirmative Defense 31, the Borrowers allege the contract was materially breached when the lender

did not periodically disburse the principal to the Borrowers or others at the Borrowers' direction,

or as set forth in the Construction Loan Agreement schedule.  (Doc. 682, p. 159).  In Affirmative

Defense 34, the Borrowers allege the contract was materially breached when the lender used the

construction loan proceeds to pay for land, rather than improvements, in violation of the

Construction Loan Agreements.  (Doc. 682, p. 161).

     The Borrowers have put forth declarations and other evidence with regard to each of these

defenses which, if true, could have the effect of excusing the Borrowers' duty to perform on the

contract.  (Docs. 685-1,  p. 358; Docs. 858-889).  NCUA has not offered any substantive evidence,

declarations, depositions, etc., to refute these claims.  Entry of a summary judgment is improper

when there is no evidence contradicting or opposing an affirmative defense.  *See, e.g., Fasano v.

Hicks*, 667 So.2d 1033, 1034 (Fla. 2d DCA 1996).  As such, the Court finds genuine issues of

material fact exist with regard to Affirmative Defenses 30, 31, and 34.

     *Affirmative Defense 35*

     In Affirmative Defense 35, the Borrowers allege Huron violated its fiduciary duty to the

Borrowers, which included a duty not to engage in self dealing, a duty of loyalty, a duty not to take

unfair advantage, and a duty to act in the best interests of the Borrowers.  (Doc. 683, p. 162).

Specifically, the Borrowers assert that Huron failed to disclose "serious" concerns regarding the

legitimacy of the appraisals and the reduction of the amounts in the appraisals. *Id.*

     The Court has previously found that there is "a genuine issue of material fact regarding

whether CLC and Huron shared a relationship such that Huron may have owed [the Borrowers] a

fiduciary duty."  (Doc. 674, p. 13).  Therefore, the Borrowers have put forth evidence with regard

to this defenses which, if true, could have the effect of excusing the Borrowers' duty to perform on

the contract.  (Docs. 685-1, p. 365-66; 858-889, ¶¶ 3-4).  As such, the Court finds genuine issues of material fact exist with regard to Affirmative Defense 35.

### 4.  Affirmative Defenses 32 and 33 Are Barred By The *D'Oench* Doctrine

*Affirmative Defenses 32 and 33*

Where fraudulent inducement is found, it renders a contract voidable, though not entirely void. *Mazzoni Farms, Inc. v. E.I. DuPont DeNemours & Co.*, 761 So.2d 306 (Fla. 2000).  Moreover, when a mortgagor asserts fraud as a defense to a mortgage foreclosure action, issues of fact are usually created which prevent disposition of the action pursuant to a motion for summary judgment. *Hinton v. Brooks*, 820 So.2d 325, 329-30 (Fla. 5th DCA 2001).  In Affirmative Defenses 32 and 33 the Borrowers allege they were fraudulently induced into entering the contracts by a number of manifestations which the lender never intended to follow through upon, which excuses their duty to perform and terminates any right of the note holder to declare a default.

In Affirmative Defense 32[4], the Borrowers allege a number of material misrepresentations were made to induce the Borrowers to enter into the contract including assertions that: (1) the Borrower was approved for permanent financing; (2) CLC would be the lender for both the construction loan and the end mortgage; (3) CLC would complete the conversion to permanent loan financing; and (4) after the construction was completed, the lender would update the end mortgage approval with final figures and close on the end mortgage.  Doc. 682, p. 160; *see also* Docs. 858-889.  In Affirmative Defense 33, the Borrowers allege essentially the same underlying facts as in Affirmative Defense 32.

---

[4]The Borrowers characterize Affirmative Defense 32 as a breach of contract.  (Doc. 893, p. 16).  Regardless of characterization this affirmative Defense is barred by the *D'Oench* doctrine.

Appellate courts have found that fraudulent inducement and other fraud based claims *or defenses* are barred by *D'Oench*. *Langley v. FDIC*, 484 U.S. 86 (1987)(holding that *D'Oench* bars the defense of fraud in the inducement); *Gulfstream Development. Group, LLC v. Schwartz*, 2009 WL 1107751, *5 (M.D. Fla. 2009)(holding that fraud in the inducement does not preclude application of *D'Oench).* Accordingly, the *D'Oench* doctrine bars the Borrowers from asserting Affirmative Defenses 32 and 33.

### 5. Affirmative Defense 36 Is Barred As A Matter of Law

*Affirmative Defense 36*

In Affirmative Defense 36, the Borrowers allege the notes and mortgages are part of the sale of unregistered securities and, pursuant to Fla. Stat. 517, those transactions are subject to rescission. "Under Florida law, any contract entered in violation of the Florida Securities and Investor Protection Act, §§ 517.011, Fla. Stat., *et seq*., is, as a matter of law, 'void and confers no enforceable rights on the contracting parties.'" *Umbel v. Foodtrader.com, Inc.*, 820 So.2d 372, 374 (Fla. 3d DCA 2002).

To constitute a security, an investment contract must involve (1) the investment of money; (2) into a common enterprise; (3) with an expectation of profits derived solely from the efforts of others. *SEC v. Kirkland*, 521 F. Supp. 2d 1281, 1289 (M.D. Fla. 2007). Though real estate transactions are generally not securities, certain transactions may qualify if the purchaser expects to participate in a profit-sharing or rental pooling arrangement upon completing the transactions. *Id.* Moreover, a transaction may also constitute a security if the owner's control over the property is limited, such as in the case of a timeshare or co-op. *See United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 860, 95 S.Ct. 2051, 2074, 44 L.Ed.2d 621 (1975). Under *Forman*, courts

consider the following in determining whether a condominium constitutes an investment contract subject to securities law: (1) whether the managerial effort of the promoter is emphasized as a means of generating an investment return; (2) whether there is a rental pool arrangement; and (3) whether the purchaser is restricted in his ability to occupy or rent his unit. *Id.*

When a purchaser retains full control over the unit purchased, the unit is not a security. *Alunni v. Development Resources Group, LLC*, 2009 WL 2579319 at *8 (M.D.Fla. Aug. 18, 2009) ("While Plaintiffs purchased income producing properties that were subject to long-term lessees and were guaranteed that income . . . Plaintiffs did not surrender any control of their units . . . Plaintiffs retained the right to do whatever they legally pleased with their units."). As in *Alunni*, here, the Borrowers had full control of their homes and surrendered no control over their units to any management entity. Moreover, unlike in a traditional co-op arrangement, the Plaintiffs' investment returns on the homes were not dependent upon the efforts of a promoter, a leasing agent, a property manager, or any other professional. Finally, there is clearly no rental pool arrangement. Thus, the Court finds the notes and mortgages, subjudice, are not part of the sale of unregistered securities. Borrowers Affirmative Defense 36 is not supported by the facts or law and fails.

### 6. The *D'Oench* Doctrine Alone Does Not Defeat Affirmative Defenses 30, 31, and 34

In *D'Oench, Duhme & Co. v. FDIC*, the court held that in litigation between a bank customer and the FDIC, as successor in interest to a bank, the customer may not rely on agreements outside the documents contained in the bank's records to defeat a claim of the FDIC. 315 U.S. 447, 459, 62 S.Ct. 676, 680, 86 L.Ed. 956 (1942). This rule ensures that banks and their customers will include the entire extent of their obligations in the bank's records thus allowing bank examiners to

assess accurately the financial condition of the bank. *Id.* This rule was later codified by the Federal

Deposit Insurance Act of 1950 at 12 U.S.C. § 1823(e)[5], which provides:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement (A) is in writing, (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e). "One purpose of § 1823(e) is to allow federal and state bank examiners to rely

on a bank's records in evaluating the worth of the bank's assets." *Langley v. FDIC*, 484 U.S. 86,

91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987). Such evaluations are necessary when a bank is

examined for fiscal soundness and when the FDIC is deciding whether to liquidate a bank or to

provide financing for purchase of its assets and assumption of its liabilities by another bank. *Id.* at

91-92. At times, these evaluations must be made "with great speed, usually overnight, in order to

preserve the going concern value of the failed bank and avoid an interruption in banking services."

*Id.* quoting *Gunter v. Hetcheson*, 674 F.2d 862, 865 (11th Cir. 1982).

The *D'Oench* doctrine applies in virtually all cases where a federal depository institution

regulatory agency, such as FDIC or NCUA, is confronted with an agreement not documented in the

---

[5]Courts often refer to § 1823(e) as the codification of the *D'Oench* Doctrine, however the common law doctrine and the statute do not completely overlap. *See Tuxedo Beach Club Corp. v. City Fed. Savings Bank*, 749 F.Supp. 635, 642 (D.N.J. 1990). The statute and common law doctrine have "cross-pollinated to the degree that it is difficult to determine where the statute ends and *D'Oench* begins." *NCUA v. Ticor Title Insurance Co.*, 873 F.Supp. 718, 724 (D.Mass. 1995) (quoting *In re NBW Commercial Paper Litigation*, 826 F.Supp. 1448, 1457 (D.D.C. 1992)). In light of the facts of the case before the Court, the statute and common law doctrine may be considered interchangeably.

institution's records.  *OPS Shopping Center, Inc. v. FDIC*, 992 F.2d 306, 308 (11th Cir. 1993).

Though application of the *D'Oench* doctrine is broad, it is not without exceptions.  As the Eleventh

Circuit has noted:

> In fact, after extensive research, this Court has unearthed only three types of situations where an assertion of *D'Oench* failed to bar the defense raised by the debtor to resist enforcement of the debt instrument: when the borrower is completely innocent of any intentional or negligent deception in her defense against her debt; when the defense is manifest on the face of the obligation the insurer seeks to enforce; and when the borrower is a nonnegligent victim of fraud in the factum.

*Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1106, n.4 (11th Cir. 1990).  For our purposes, only

the second exception is relevant.  Originally articulated in *Howell v. Continental Credit Corp.*, this

exception provides that "the *D'Oench* doctrine does not protect federal agencies where bilateral

obligations are evident on the face of the documents at issue".  *Baumann v. Savers Federal Savings*

*& Loan Association*, 934 F.2d 1506, 1517 (11th Cir. 1991) (citing *Howell v. Continental Credit*

*Corp.*, 655 F.2d 743, 746-47 (7th Cir. 1981)).  The *Baumann* Court went on to explain that

application of *D'Oench* in such circumstances would not further the purposes of the doctrine:

> Bank examiners cannot be misled by documents that evidence the true obligations of the parties . . . Examiners are fully aware that any agreement could be breached, and the likelihood of this occurring must be taken into account in an evaluation of an institution's assets and liabilities.  Thus, the protections provided to the deposit insurance fund by the *D'Oench* doctrine would not be furthered by allowing financial institutions to breach valid agreements or to carry them out in bad faith.

*Id.*

Affirmative Defenses 30, 31, and 34 are based on the terms and conditions of the

Construction Loan Addendum and Construction Loan Agreement which were incorporated by

reference into the notes sued upon.  Each promissory note includes a Construction Loan Addendum,

which is incorporated by reference into the note and "is deemed to amend and supplement the Note."

*See* Construction Loan Addendum.  The Construction Loan Addendum, in turn, references a Construction Loan Agreement and "incorporates by reference" the terms of the Construction Loan Agreement "as if they were fully reproduced in this Addendum." *Id.*  These agreements are unambiguously stated in the Construction Loan Addenda and Construction Loan Agreements, which accompany the notes.  As such, they are considered "bilateral obligations" and do not constitute side agreements.  Thus, Affirmative Defenses 30, 31 and 34 are not subject to the *D'Oench* doctrine.

Affirmative Defense 35 is a hybrid between a breach of fiduciary duty claim and a claim for fraud.  The Court will entertain further argument regarding the applicability of the *D'Oench* doctrine to this affirmative defense at the trial of this cause.

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1.    Defendant NCUA's Motion for Summary Judgment (Doc. 732) is **DENIED**. Borrowers' Affirmative Defenses 30 through 36 are not barred for failure to exhaust administrative remedies.  Borrowers'  Affirmative Defenses 30, 31, 34 and 35 present  genuine issues of material fact.

2.    Borrowers' Affirmative Defenses 1 through 29 are barred from reconsideration and are barred by the *D'Oench* doctrine..

3.    Borrowers' Affirmative Defenses 32 and 33 are barred by the *D'Oench* doctrine.

4.    Borrowers' Affirmative Defense 36 fails as a matter of law.

**DONE AND ORDERED** at Ft. Myers, Florida, on September 30, 2011.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

COPIES TO:
COUNSEL OF RECORD